IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RRF BUILDING, LLC and** <br> **SOPHIE MARIE LANGFORD** <br>       **Plaintiffs** <br><br> v. <br><br> **EXCEL DEVELOPMENT** <br> **GROUP, NETANEL INVEST USA,** <br> **INC., and MICHAEL HELETZ,** <br>       **Defendants** | **Civil Action No. 1:23-CV-0341** |

## AMENDED COMPLAINT

**AND NOW, TO WIT,** this16th day of March, 2023, comes Plaintiff, RRF Building, LLC, by and through its counsel, Stephen R. McDonald, Esquire, and CGA Law Firm, and files the within Amended Complaint, averring as follows:

### I. PARTIES

1. Plaintiff, RRF Building, LLC ("RRF" or "Company"), is a Delaware limited liability company.

2. Plaintiff, Sophie Marie Longford ("Longford" or "Seller") is an adult individual and the sole member of RRF.

3. Defendant, Excel Development Group, ("Excel") is a limited liability company with a business address of 116-55 Queens Boulevard, Suite 206, Forest Hills, NY 11375.

{02256295/1}

4.  Defendant, Netanel Invest USA, Inc. ("Netanel"), is a corporation with a business address of 116-55 Queens Boulevard, Suite 206, Forest Hills, NY 11375.

5.  Defendant Michael Heletz ("Heletz") is an adult individual residing in New York who, upon information and belief, is the sole member of Excel and the sole owner of Netanel.

## II.  JURISDICTION & VENUE

6.  Plaintiff relies on and incorporates the preceding paragraphs by reference as though fully set forth herein at length.

7.  Jurisdiction is proper in this Court because the property which located at 228 Walnut St., Harrisburg, PA 17101-1714 and which is subject to this contract of is located in Dauphin County, Pennsylvania and Defendant's business is located in New York.

8.  Venue is proper as this matter was removed from the Court of Common Pleas of Dauphin to the United States District Court for the Middle District of Pennsylvania, unopposed.

## III.  FACTS

### AUCTION & UNDERLYING AGREEMENT

9.  RRF is a company whose sole asset consists of the Ronald Reagan Federal Building and courthouse located at 228 Walnut St., Harrisburg, PA 17101-

1714 ("Property") along with the fixtures, permits, rights and other assets associated with the Property.

10. RRF contracted with commercial real estate company Ten X to conduct an online auction ("Auction") for RRF.

11. The Auction was scheduled for November 14, 2022.

12. All potential bidders were provided with terms of participation in the Auction. ("Participation Terms"). A true and correct copy of the Participation Terms is attached hereto as Exhibit "A".

13. As explained in the Participation Terms, Ten X was simply acting as the broker on "behalf of Seller", in this case RRF, to conduct the Auction of the Property. *See* Exhibit "A" p. 1 of 10.

14. Moreover, under the Participation Terms, by "registering for an Event or submitting an Offer…Participant acknowledges having read and accepted these terms." Id.

15. The Participation Terms included the following:

    a) Create an account and register (Exhibit A p.2);

    b) Participants must review the Plaintiff's purchase and sale agreement and all applicable disclosures & documents ("Purchase Documents") which are non-negotiable (Exhibit A p.2);

    c)    Conduct all necessary legal, inspection, and environmental due diligence (Exhibit A, p 2-3);

    d)    Sign purchase documents within 2 hours if bidder is notified that they are the winning bidder (Exhibit A, p. 3);

    e)    "If Winning Buyer fails to timely sign the Purchase Documents…(b) Seller may reject Winning Buyer's Offer, and/or (c) Seller may declare Winning Buyer to be in default of the Purchase Documents and pursue claims against Winning Buyer for specific performance, payment of the 'Earnest Money Deposit' (defined below), and all other remedies available at law; Seller is an express, intended, third party beneficiary of the foregoing clauses (b) and (c)." (Exhibit A p.3-4)

    f)    Provide proof of readily available funds (Exhibit A p.4)

    g)    Pay the Earnest Money Deposit by 5:00 p.m. on the next business day following the notification of the winning bid (Exhibit A, p.4).

    h)    "Winning Buyer will be required to pay the Transaction Fee in addition to Winning Buyer's Offer amount at closing. Unless otherwise specified for a particular Property, the Transaction Fee will be added to Winning Buyer's Offer amount *to establish the total purchase price payable by Winning Buyer.*" (Exhibit A p.4-5) (emphasis added)

16. In this instance the Purchase Documents included the Membership Interest Purchase Agreement ("Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "B".

17. Under the Agreement, the Ernest Money was a 10% deposit required to be paid within one business day.

18. All bidders confirmed agreeing to all of the Participation Terms prior to bidding.

19. Heletz, who upon information and belief is the managing member of Netanel, registered as a bidder.

20. Heletz, who identified himself as the principal of Excel Development Group, purported to have funds available in the amount $12,249,443.00. A true and correct copy of Heletz's Ten X summary page is attached hereto as Exhibit "C".

21. Heletz & Excel placed the winning bid of Twelve Million Dollars ($12,000,000.00).

22. On or about November 16, 2022, Ten X notified Heletz and Excel that they were the winning bidder.

23. Ten X also electronically sent Heletz and Excel a packet ("Notification Packet") containing the Agreement, and instructions that the Agreement must be signed within 2 hours, as well as wiring instructions to transfer

the 10% deposit. A true and correct copy of the Notification Packet (except the Agreement, which was included as part of the Notification Packet but has already been identified herein) is attached hereto as Exhibit "D".

24. The Agreement set the closing date for December 8, 2022.

25. In violation of the Participation Terms, Defendants Heletz and Excel did not sign the Agreement within 2 hours of close and failed to wire the 10% deposit as required.

26. Heletz claimed, to Ten X and the Seller, that he was "busy" that evening and was preparing for scheduled surgery to this throat, and that therefore he would not communicate with the auction house or the agents via voice calls only via text.

27. Heletz assured Ten X and Seller he would sign the Agreement and make the deposit the following day.

28. However, Defendants Heletz and Excel failed to sign the Agreement and/or make the required deposit.

29. Heletz's failure to sign the Agreement, wire the down payment, or otherwise adhere to the Participation Terms within the deadlines set in the Participation Terms amounted to a breach of contract. Franconia Assocs. v. United States, 536 U.S. 129, 142–43, 122 S. Ct. 1993, 2002, 153 L. Ed. 2d 132 (2002) ("Failure by the promisor to perform at the time indicated for performance in the

{02256295/1}

contract establishes an immediate breach.") *citing Restatement (Second) of Contracts* § 235(2) (1979).

30. After he committed this breach, Heletz failed to communicate with Plaintiffs for several days.

31. When Heletz resumed contact, he announced that he wanted a new agreement and to delay the closing.

32. Upon information and belief, Heletz and his attorney, Craig Adler, drew up a new purchase agreement and an addendum (collectively the "Second Agreement"). A true and correct copy of the Second Agreement is attached hereto as Exhibit "E".

33. Thereafter, at or about 5:19 p.m. on November 21st 2022, Heletz emailed a copy of the executed Second Agreement to Attorney Adler, and Craig Dunkle, Plaintiff's commercial real estate agent ("Dunkle"). A true and correct copy of the November 21, 2022 email chain is included herein as Exhibit "F".

34. In that November 21, 2022 email, Heletz asked Attorney Adler to review the Second Agreement before releasing it.

35. Approximately 16 minutes later, at 5:35 P.M. on November 21, 2022, Attorney Adler responded, instructing Dunkle to forward the Second Agreement to Plaintiff:

> Craig D,
> Send to seller.
> Craig
> (See "Exhibit F").

36. Thereafter the Second Agreement was sent to Seller.

37. The Second Agreement was similar to the Agreement Heletz and Excel had breached, but it listed November 21, 2022 as the Effective Date (as opposed to November 16, 2022) and contained several new terms handwritten by Heletz, including making Netanel the Purchaser, in place of Excel.

38. Additionally, the Second Agreement listed the closing date as January 30, 2023, as opposed to December 8, 2022.

39. Under this Second Agreement, Netanel was required to pay the 10% Earnest Deposit within one business day of the Effective Date.

40. Specifically, Paragraph III(A) of the Second Agreement states:

> Purchaser shall pay an Earnest Deposit of ten percent (10%) of the Purchase price ($1,224,000) to the De Bruin Law Firm, as Escrow Agent within one (1) business day of the Effective Date (the "Earnest Money") which shall be deposited in a federally-insured account at a bank to be held and disbursed in accordance with the terms of this Agreement.

> See Exhibit E p.2

41. Plaintiffs reluctantly agreed to delay closing *on the condition* that the 10% deposit was received by 5pm 22nd November 2022, as specified in the Second Agreement.

42. As per Paragraph XV (E) of the Second Agreement:

> This contract supersedes any prior agreement or representations prior to today's date (21st day of November, 2022). **The option to extend is given on the understanding that** the buyer signs and returns the contract by 5pm ET on the 21st day of November 2022. **The buyer must also pay the deposit as per the original contract within 24 hours (by 5pm tomorrow 22nd November).**

(Emphasis added)

See Exhibit E p. 8.

43. On or about 9:56 am on November 23rd 2022 the Plaintiffs returned an executed copy of the Second Agreement to the Agent, via email which email was copied to Defendants.

44. Despite signing the Second Agreement and the Addendum, Heletz and Netanel breached the Second Agreement and did not pay the 10% deposit by November 22, 2022 (or ever).

45. In addition to failing to pay the required 10% down payment, Defendants also breached the Second Agreement by failing to close by December 8th, 2022 or January 30, 2023, and by failing to pay the remainder of the purchase price.

{02256295/1}

## PIERCING CORPORATE VEIL

46. It is believed and therefore averred, that Defendant Netanel is not truly an independent corporate entity, but simply a facade for Defendant Heletz, subject to his complete control and indistinguishable from Defendant Heletz, and therefore the corporate veil should be pierced and Defendant Heletz should be personally liable for any and all actions of the corporation.

47. It is believed and therefore averred that Netanel was created by Heletz shortly before bidding on RRF. Netanel did not register with Ten X as a bidder, instead it was Heletz and Excel who registered.

48. Later, upon information and belief, Netanel did not have the funds to complete the transaction. This fact indicates Netanel is not an operating company with its own assets, but rather a facade for Heletz.

49. Additionally, when Heletz stated that he was having surgery and could not complete the Agreement in a timely manner, Netanel could not offer any other employee or agent to transact its business, despite the timeline required and agreed to by Defendants.

50. Moreover, Plaintiffs and their attorney have never had contact with anyone at Netanel other than Heletz.

51. In other words, Netanel is not a corporation with employees, but rather simply the alter ego of Heletz.

52. Netanel does not have its own email, and instead Heletz uses Heletz@exceldevgroup.com which is another entity he created.

53. As discussed *supra*. Heletz and Netanel never had the funds to pay the down payment or purchase RRF.

## COUNT I
## BREACH OF CONTRACT OF THE PARTICIPATION TERMS
### (Heletz & Excel)

54. Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as if set forth at length herein.

55. Under Pennsylvania Law, an "auction is defined as the offer to sell property by an auctioneer or apprentice auctioneer to the members of an audience congregated for the purpose of making bids for the purchase of the property." Younkin v. Bureau of Pro. & Occupational Affs., State Real Est. Comm'n, 774 A.2d 1281, 1285 (Pa. Commw. Ct. 2001)

56. An auction results in "a binding contract between the bidder and the auctioneer ... on the terms and conditions *published in the advertisements of the auction or announced at the commencement of the sale*". Butterline v. Bank of New York Mellon Tr. Co., Nat'l Ass'n, No. CV 15-1429, 2018 WL 1705957, at *3 (E.D. Pa. Apr. 6, 2018) *citing Williston on Contracts* § 4:12 (4th ed. May 2017 update) (emphasis added).

57. Accordingly, Heletz's and/or Excel's registration and participation in the auction created a binding contract with with Longford and RRF, which includes the terms contained in the Participation Terms.

58. Heletz and/or Excel placed the winning bid to purchase the Property for $12,000,000.00.

59. Additionally, the Participation Terms required Heletz and/or Excel to pay the Transaction Fee of $240,000.00, for a total contract purchase price of $12,240,000.00.

60. Also, under the Participation Terms, Heletz and/or Excel were required to sign the Agreement within 2 hours of being notified of the winning bid, deposit the 10% Earnest Money ($1,224,000.00) no later than 5:00 pm on the next business day, pay the remaining $11,016,000.00 on or before December 8, 2022, and all other terms of the Participation Terms and Agreement.

61. Heletz and Excel failed to perform any of these requirements.

62. At the moment Heletz and Excel failed to sign the Agreement and/or deposit the Ernest Money, the were in breach of their contract. Franconia Assocs. v. United States, 536 U.S. at 143 ("When performance of a duty under a contract is due, any non-performance is a breach") (*citing J. Murray, Contracts* § 2, p. 5 (2d rev. ed.1974).

{02256295/1}

63.    The Participation Terms and Agreement provide remedies in the event of default by the Defendant. Specifically, Paragraph XII of the Agreement, which is incorporated a part of the Participation Terms, states:

> In the event that the terms and conditions of this Agreement have not been satisfied and Purchaser does not purchase the Property in accordance with the requirements of this Agreement, then Seller, as its sole and exclusive remedy shall declare this Agreement cancelled in which even the entire Earnest Money shall be forfeited and paid to Seller as full liquidated damages and not as a penalty. The parties acknowledge that Seller's damages would be difficult to ascertain precisely, and the parties hereto shall have no further rights or obligations with respect to each other except as otherwise provided herein.

See Exhibit "A" p. 6.

64.    As a result of Defendants' breach, the Plaintiffs suffered liquidated damages in the amount of $1,224,000.00, that agreed upon, plus legal fees.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants for damages in the amount of $1,224,000.00 plus interest, expenses, attorney fees and costs incurred in connection with this action, and any other relief this court deems necessary.

## COUNT II.
### BREACH OF CONTRACT OF THE SECOND AGREEMENT
### (Heletz & Netanel)

65.    Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as if set forth at length herein.

66. The Second Agreement was drafted by Heletz and signed by Heletz, Netanel, Langford, and RRF forming a contract.

67. At all times, Plaintiffs were prepared and able to proceed with the terms and obligations created by the Second Agreement.

68. Plaintiffs relied upon Heletz, individually, and on behalf of Excel and Netanel, to complete the terms and obligations created by the Second Agreement.

69. Defendant breached the Second Agreement by failing to ever pay the required 10% down payment of $1,224,000.

70. Defendant also breached by failing to close on the transaction by the contract date of December 8, 2022 or even by January 30, 2023.

71. The Second Agreement provides remedies in the event of such default by the Defendant. Specifically, in Paragraph XII, the Agreement states:

> In the event that the terms and conditions of this Agreement have not been satisfied and Purchaser does not purchase the Property in accordance with the requirements of this Agreement, then Seller, as its sole and exclusive remedy shall declare this Agreement cancelled in which even the entire Earnest Money shall be forfeited and paid to Seller as full liquidated damages and not as a penalty. The parties acknowledge that Seller's damages would be difficult to ascertain precisely, and the parties hereto shall have no further rights or obligations with respect to each other except as otherwise provided herein.

See Exhibit "E" p. 6.

72. The Second Agreement also provides for indemnification and legal fees. Specifically, Paragraph XI provides for payment of:

> any and all claims, losses, damages, liabilities and expenses (including without limitation, settlement costs **and any legal or other expenses**...reasonably incurred by Seller in connection with each and all of the following:
>
> B. The nonfulfillment or breach of any covenant, agreement or obligation of Purchaser contained in or contemplated by this Agreement.

(emphasis added)

73. As a result of Defendants' breach, the Plaintiffs suffered damages in the amount of $1,224,000.00 plus legal fees.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants for damages in the amount of $1,224,000.00 plus interest, expenses, attorney fees and costs incurred in connection with this action, and any other relief this court deems necessary.

## COUNT III.
### FRAUD (Netanel, Excel & Heletz)

74. Plaintiffs hereby incorporate all preceding paragraphs of this Complaint as if set forth at length herein.

75. Defendants intentionally participated in the Auction for RRF, and drafted and signed the Second Agreement, while at all times knowing that the terms required payment of a 10% deposit within hours of making a successful bid.

76. Upon information and belief, despite the fact that the Defendants never had the means to pay the necessary deposit, in excess of a million dollars, the Defendants still bid $12,000,000.00 and represented that they could meet the terms.

77. Such representation was material to the sale of the Property and Plaintiffs' agreement to sign the Second Agreement.

78. Knowing that the terms of the auction and the requirement of the deposit were clear and known to the Defendants, the Plaintiffs reliance on Defendants bid and assurances was justifiable and reasonable.

79. As a result of such representation, the Plaintiffs did not accept other bids.

80. It is believed and therefore averred Defendants made such representation with knowledge of its falsity, or recklessness as to its falsity.

81. The Defendants made such false representation with the intent of misleading the Plaintiffs and preventing them from accepting any other bids.

82. Upon information and belief, the Defendants bid on the Property knowing they could not meet the terms but with the expectation leveraging the situation and negotiating different prices, payments, and closing dates.

83. But for Defendants' misrepresentations, Plaintiffs would have sought to contract with another bidder at the time of the auction.

84. Heletz, individually, and as agent for Exel and Natanel, made a misrepresentation to the Plaintiffs by signing the Second Agreement and representing to Plaintiffs that Defendants intended to follow through with the induced act to purchase the Property.

85. Therefore the Defendants have specifically alleged a misrepresentation and a fraudulent conveyance and utterance.

86. As a result of Defendants fraud, Plaintiff suffered damages in the amount of $1,224,000.00 plus costs and legal fees.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants for damages in the amount of $1,224,000.00 plus interest, expenses, attorney fees and costs incurred in connection with this action, and any other relief this court deems necessary.

Respectfully submitted,

CGA LAW FIRM

By: */s/ Stephen R. McDonald*
Stephen R. McDonald, Esquire
Attorney I.D. No.310319
135 North George Street
York, PA   17401
(717) 848-4900
(717) 843-9039 fax
smcdonald@cgalaw.com
Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RRF BUILDING, LLC and : <br> SOPHIE MARIE LANGFORD : <br>       Plaintiffs    : <br> : <br> v.      : <br> : <br> EXCEL DEVELOPMENT : <br> GROUP, NETANEL INVEST USA,: <br> INC., and MICHAEL HELETZ, : <br>       Defendants  : | Civil Action No. 1:23-CV-0341 |

## CERTIFICATE OF COMPLIANCE

I certify that the Amended Complaint complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and the Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

                                                Submitted by:

                                                By: */s/ Stephen R. McDonald*
                                                Stephen R. McDonald, Esquire
                                                Attorney I.D. No.310319

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2023, a true and correct copy of the *Amended Complaint* was filed electronically through the Court's ECF system.

Via CM/ECF:

>Joshua L. Schwartz, Esquire
>Justin Tomevi, Esquire
>Barley Snyder
>100 East Market Street
>York, PA   17401
>*Attorneys for Defendants*

>CGA LAW FIRM

>By: */s/ Stephen R. McDonald*
>Stephen R. McDonald, Esquire
>Attorney I.D. No.310319
>135 North George Street
>York, PA   17401
>(717) 848-4900
>(717) 843-9039 fax
>smcdonald@cgalaw.com
>*Attorney for Plaintiffs*

{02256295/1}