DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0B84D1

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

This MEMBERSHIP INTEREST PURCHASE AGREEMENT (the "Agreement"), is made and effective as of November 16, 2022, by and among RRF Building, LLC, a Delaware limited liability company (the "Company"), Sophie Marie Longford ("Seller") and Estal Development Group, a(n) New York Limited Liability Company or assigns ("Purchaser")

RECITALS:

WHEREAS, Seller is the sole member of the Company owning one hundred percent (100%) of its membership interest (the "Membership Interest"); and

WHEREAS, the Company's only assets consist of real property located at 228 Walnut St, Harrisburg, PA 17101-1714, building, related fixtures, easements, agreements, permits variances, approvals, drawings, tax abatements, tax credits, financial incentives, architectural plans, and rights associated with that certain real property (the "Property"); and

WHEREAS, the sale of the Membership Interest in the Company would result in a complete transfer of the Property by virtue of the Company's exclusive ownership of the Property; and

WHEREAS, Purchaser desires to buy the Membership Interest and at the time of the transfer of the Membership Interest the Company would still be the exclusive owner of the Property; and

WHEREAS, Seller has agreed to sell, and Company has agreed to purchase the Membership Interest upon certain terms and conditions contained herein; and

IT IS THEREFORE AGREED, in consideration of the mutual promises and covenants hereinafter set forth, and for other good and valuable consideration, the parties hereto agree as follows:

I. SALE OF MEMBERSHIP INTEREST
Seller shall sell, transfer and assign all its right, title and interest in and to the Membership Interest to Purchaser at Closing.

II. PURCHASE PRICE
$ 12,240,000.00    (which equals Buyer's offer price of $ 12,000,000.00    plus a Ten-X Transaction fee of $ 240,000.00    )


EXHIBIT B

DocuSign Envelope ID: 43341AFC-3B2B-4F87-940F-8DFF9A0B84D1

### III. PAYMENT OF PURCHASE PRICE

The Purchase Price shall be payable as follows:

A. Purchaser shall pay an Earnest Deposit of ten percent (10%) of the Purchase Price to the De Bruin Law Firm, as Escrow Agent, within one (1) business day of the Effective Date (the "Earnest Money") which shall be deposited in a federally-insured account at a bank to be held and disbursed in accordance with the terms of this Agreement.

B. The Earnest money shall be applied to the Purchase Price at closing.

C. At closing, the Earnest Money shall be credited to the Purchase Price.

D. The balance of the purchase price shall be paid by Purchaser to Seller in cash or electronically wired funds at the time of Closing plus or minus net adjustments as provided herein.

E. The remaining payment of <u>Eleven million sixteen thousand</u> ($ <u>11,016,000.00</u>) shall be due on or before <u>December 8, 2022</u> in the form of cash, certified check, or wire.

### IV. ESCROW AGENT

The parties acknowledge that Escrow Agent represents Seller and Purchaser in this transaction. Seller and Purchaser agree that Escrow Agent may act in this dual capacity. The parties understand and agree that Escrow Agent is authorized to deliver the Earnest Money to Seller at Closing. If Closing does not occur, and Escrow Agent receives a notice requesting release of the Earnest Money from either party, Escrow Agent is hereby authorized to release the Earnest Money to the requesting party, provided that:

A. the notice sets forth the basis on which the Earnest Money is to be released;
B. the notice is simultaneously sent to the other party; and
C. the request is not refuted by the non-requesting party within ten (10) days after delivery of the notice. If the parties cannot agree as to the disposition of the Earnest Money, Escrow Agent is authorized to hold the Earnest Money until the parties reach Agreement or until a court of competent jurisdiction establishes the rightful disposition. Escrow Agent shall also be authorized to file an action in interpleader to determine the proper party entitled to the Earnest Money. In consideration of Escrow Agent's services, Seller

DocuSign Envelope ID: 43341AFC-302E-4F87-940F-8DFF9A0B84D1

and Purchaser agree to indemnify and hold Escrow Agent harmless from and against all liabilities, damages, costs, expenses (including all attorneys' fees and expenses incurred by Escrow Agent or any of Escrow Agent's employees or agents), causes of action, suits, demands, judgments, and claims of any nature whatsoever that might arise at any time out of Escrow Agent's holding, investing, reinvesting, payment, or other disposition of the Earnest Money, except those which result from Escrow Agent's willful misconduct or neglect.

D. Escrow Agent may act in reliance on any writing or instrument or signature which it in good faith believes to be genuine and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so. Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner or execution or validity of any instrument deposited in this escrow nor as to the identity, authority or right of any persons executing the same; and its duties hereunder shall be limited to safekeeping of the Earnest Money, and for the disposition of the same in accordance with this Agreement.

## V. COMPANY DEBT

The parties acknowledge and agree the Company has no outstanding liabilities. Should the Company have unpaid expenses prior to Closing, those payments shall either be paid prior to closing and receipts of payment shall be furnished to Purchaser or payment shall be withheld from Seller's proceeds at the time of Closing.

## VI. AMENDMENT OF OPERATING AGREEMENT

At Closing, the Company shall amend its Operating Agreement to show the removal of the Seller as a member of the Company and the addition of Purchaser.

## VII. REPRESENTATION AND WARRANTIES OF SELLER

As a material inducement to Company to purchase the Membership Interest, Seller represents and warrants to Company as follows:

A. The Company is a Delaware limited liability company, duly organized, validly existing and in good standing under the laws for the State of Delaware; and

B. Seller has the lawful right, power, authority and capacity to sell the Membership Interest, effectively transferring 100% ownership in the Company and the Property to Purchaser in accordance with the terms, provisions and conditions of this Agreement.

C. Seller is and at the Closing will be the owner of the Membership Interest free and clear of any liens or encumbrances. Seller does not have any ownership interest or claim upon any of the tangible or intangible assets used by the Company in the conduct of its business at the time of Closing. At Closing, the Company and Property will be free and clear of any liens or encumbrances and the Company will have no outstanding liabilities except for taxes that may have accrued but are not yet due, which liabilities will be assumed by Seller and shall not be a liability of the Company or the Purchaser.

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0B84D1

D. Seller is not a party to or otherwise bound by any written or oral agreements which would prevent Seller from entering into this Agreement. Seller: (1) has not pledged its assets for the benefit of any creditor; (2) has not filed for bankruptcy; and (3) is not a party to a divorce action, family court order, or marital separation agreement that provides any other party any rights in and to the Membership Interest, the Company or the Property.

E. Except as to matters that have been previously disclosed in writing to Company, Seller has no knowledge of any action, suit, or governmental proceeding or investigation, pending or threatened, against the Company or Seller or otherwise relating to the transactions contemplated by this Agreement.

F. On the Closing Date, all necessary action will have been taken by Seller pursuant to its operational documents authorizing and approving the execution of and entry into this Agreement, the execution and delivery by Seller of the documents and instruments to be executed and delivered by Seller on the Closing Date, and the performance by Seller of Seller's duties and obligations under this Agreement and of all other acts necessary and appropriate for the consummation of the purchase and sale of the Company and its Property as contemplated by and provided for in this Agreement.

G. The Company has never had any employees, has never had any employee benefits plans, owes no wages to any person, and has never been required to maintain worker's compensation insurance.

H. Except for accounts payable and accrued expenses and as set forth in Schedule VIII(H), the Company has no debts, liabilities, commitments or obligations (including, without limitation, any unasserted claims for which there are circumstances known or which should reasonably be known to exist by the Seller or the Company that could serve as a basis therefor), absolute or contingent, liquidated, or unliquidated, matured or unmatured, or due or to become due.

I. Seller has timely filed and paid all taxes due to any governmental authorities, including local, state, and federal governments.

J. The Company holds all permits, licenses and approvals from all Federal, state and local governmental authorities (collectively, the "Permits") necessary for it to own, remediate, renovate, redevelop, the Property and to carry on its businesses as now being conducted, and no such Permit has been rescinded and all such Permits are in full force and effect and are listed on Schedule VIII(K).

VIII. SELLER'S REPRESENTATIONS OF THE PROPERTY
Concerning the Property, Seller represents the following as of the Effective Date of this Agreement:
A. RRF Building, LLC holds title to the property as shown in Instrument Number 20220004451 at Pages 1-17.

This representation shall not survive the Closing of this Agreement.

DocuSign Envelope ID: 43341AFC-3B2E-4F07-940F-8DFF9A0B84D1

## IX. CLOSING

A. Closing Date: December 8, 2022. If the Closing Date falls on a weekend or a state or federally recognized holiday, the Closing Date shall be the next business day.

B. At Closing, Seller shall deliver to Purchaser the following:

1. A duly executed Assignment of Membership Interest (the "Assignment") assigning 100% of the Membership Interest to the Purchaser; and

2. Such written evidence of authority to execute and deliver the Assignment to Purchaser; and

3. Any documents that Purchaser's and Seller's counsel may reasonably determine are necessary to assign any easements, licenses, Service Agreements and Permits relating to the use of the Property, which Purchaser's and Seller's counsel determines are assignable;

4. a certificate, in form and substance reasonably satisfactory to Purchaser, confirming that Sellers representations and warranties are true and correct as of the Closing Date; and

5. all keys (and instructions as to which locks the keys operate); all combinations or passcodes (and instructions as to the location of all locks to which they apply) to the premises.

## X. INDEMNIFICATION BY SELLER

Seller shall indemnify and hold harmless Company and Purchaser in respect of any and all claims, losses, damages, liabilities, and expenses (including, without limitation, settlement costs and any legal or other expenses for investigating or defending any actions or threatened actions) reasonably incurred by Company or Purchaser in connection with each and all of the following:

A. Any misrepresentation or breach of any warranty made by Seller in this Agreement; and

B. The nonfulfillment or breach of any covenant, agreement or obligation of Seller contained in or contemplated by this Agreement.

## XI. INDEMNIFICATION BY PURCHASER AND COMPANY

Purchaser and Company shall jointly and severally indemnify and hold harmless Seller in respect of any and all claims, losses, damages, liabilities and expenses (including, without limitation, settlement costs and any legal or other expenses for investigating or defending any actions or threatened actions) reasonably incurred by Seller in connection with each and all of the following:

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-6DFF9A0B84D1

A. Any misrepresentation or breach of any warranty made by Purchaser in this Agreement; and

B. The nonfulfillment or breach of any covenant, agreement or obligation of Purchaser contained in or contemplated by this Agreement.

XII. REMEDIES UPON BREACH

In the event that the terms and conditions of this Agreement have been satisfied and Purchaser does not purchase the Property in accordance with the requirements of this Agreement, then Seller, as its sole and exclusive remedy, shall declare this Agreement cancelled in which event the entire Earnest Money shall be forfeited and paid to Seller as full liquidated damages and not as a penalty. The parties acknowledge that Seller's damages would be difficult to ascertain precisely, and the parties hereto shall have no further rights or obligations with respect to each other except as otherwise provided herein. In the event of Seller's breach of any of the terms, conditions, warranties or representations hereof Purchaser shall have the right to immediately terminate this Agreement upon written notice to Seller and receive back the entire Earnest Money and upon return of the same the parties hereby shall have no further rights and obligations or liabilities to each other hereunder or demand and compel by an action for specific performance or similar legal proceedings, if necessary, the immediate conveyance of the Property by Seller in compliance with the terms and conditions of this Agreement; provided, however, that such action must be brought within thirty (30) days of the scheduled Closing Date or said remedy shall be deemed waived by Purchaser.

XIII. NOTICES

All notices which are required hereunder to be in writing shall be effective with respect to the party who is to receive them as of the date on which such notice is received by mail in care of such party or their counsel in any United States Post Office by certified or registered mail, postage prepaid or received by messenger, overnight service or otherwise to the office of the patty or their counsel. The addresses for such notices are as follows:

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0B64D1

AS TO PURCHASER                     Michael Heletz

With copy to:


AS TO SELLER                        RRF Building, LLC
                                    Attn: Justin Etzin
                                    16 Wellington Ave
                                    Greenville, SC 29609

With Copy to                        De Bruin Law Firm, LLC
                                    Attn: Bryan De Bruin
                                    16 Wellington Ave
                                    Greenville, SC 29609

## XIV.  TAXES

Seller and the Company for the taxable year ending December 31, 2022, shall elect to treat the Company's 2022 tax year as two separate tax years, the first of which ends on the Closing Date, so that the Company's items of income, deduction, gain and loss from January 1, 2022 through the Closing Date, are allocated to Seller prior to the assignment of Seller's interest in the Company at the Closing Date. A second tax year shall commence on the day after the Closing Date.

## XV.  MISCELLANEOUS

   A. Seller shall provide a prorated credit for any unpaid taxes due on the property for the period between January 1, 2022 to the date of Closing. All unpaid taxes owed on the Property, if any, for previous years shall be the responsibility of Seller.

   B. All legal, accounting, and other costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby, including attorneys' fees, shall be borne by the party incurring the expense.

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0B84D1

C. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same and shall become effective when one or more counterparts have been signed by each party and delivered to the other party.

D. The parties hereto each agree to execute and deliver such other documents, certificates, agreements and other writings and to take such other actions as may be necessary or desirable in order to consummate or implement expeditiously the transactions contemplated by this Agreement.

XVI.   UNITED STATES OF AMERICA RESERVATION DISCLOSURE

Purchaser confirms receipt of GSA Addendum dated February 4, 2022, whereby the United States of America reserves rights, access, and occupancy to the Property as described in Exhibit B attached herein (the "Reservation"). Buyer confirms, per the Reservation, the United States of America shall maintain its reservation, use, and occupancy of the Property until the earlier of the expiration of the Reservation or working sixty (60) days' notice of its intent to vacate. The Reservation shall expire on February 4, 2024 as described in Exhibit B.

{SIGNATURE PAGE TO FOLLOW}

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0B84D1

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

Seller: Sophie Marie Longford

Purchaser: Excel Development Group,

a New York Limited Liability Company

Print Name and Title
Michael Heletz

Michael Heletz, President

Company: RRF Building, LLC

Authorized Signature

Michael Heletz

Print Name and Title

ESCROW AGENT: Bryan De Bruin

The Escrow Agent hereby acknowledges receipt of the Earnest Money set forth above and agrees to hold the same in accordance with the terms of this Agreement as indicated on the date indicated below.

Escrow Agent:

Date:

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0884D1

## Exhibit A
## PROPERTY LEGAL DESCRIPTION

228 Walnut Street
Parcel: 04-011-001-000-0000
City of
Harrisburg Dauphin
County, Pennsylvania

ALL THAT CERTAIN lot or parcel of land situate in the City of Harrisburg, County of Dauphin and Commonwealth of Pennsylvania as shown on a plan entitled "Boundary Survey, Ronald Reagan Federal Building", prepared by Langan Engineering & Environmental Services, Inc. dated 03-24-2020, and being more fully bounded and described as follows:

BEGINNING at the point of intersection of the westerly right-of-way line of North 3rd Street (60' wide) and the southerly right-of-way line of Locust Street (52.5' wide); thence,

1. Along the westerly right-of-way line of North 3rd Street, North 27°48'05" West, a distance of 129.91 feet; thence,

2. Along the northerly right-of-way line of Walnut Street (50' wide), South 74°54'17" West, a distance of 206.73 feet; thence,

3. Along the easterly right-of-way line of North Court Street (formerly Raspberry Alley)(18' wide), North 8°14'07" West, a distance of 162.50 feet; thence,

4. Along the southerly right-of-way line of Locust Street, North 83°56'38" East, a distance of 209.29 feet to the first mentioned point and place of BEGINNING.

Encompassing an area of 30,270 square feet, or 0.695 acres, more or less.

DocuSign Envelope ID: 43341AFC-3B2E-4F67-940F-8DFF9A0B34D1

Exhibit B

United States of America Reservation Disclosure

ADDENDUM NUMBER 1
TO
INVITATION FOR BID
4-G-PA-1177AA
PEACH421002001

228 Walnut Street
Harrisburg, PA 17101

November 2, 2021

The purpose of this Addendum, dated November 2, 2021, is to notify all bidders and prospective bidders:

1. The Government intends to reduce the term of the reserved estate to twenty-four (24) months and add a sentence requiring that the Government to give Grantee at least 60 days' notice if the Government vacates the Reserved Property prior to the Termination Date.

2. Accordingly, Page 17 of the IFB (page 19 of 23 of the .pdf) entitled TERMS OF THE RESERVED ESTATE is hereby amended by deleting in the Reserved Estate section a. Term in its entirety and replacing it with the following:

"a. Term. GRANTOR will have exclusive and unfettered access to, and use and occupancy of, the Reserved Property at all times. The term of this reserved estate will commence on the date of the conveyance of the Property to GRANTEE and will terminate no later than twenty-four months thereafter (the "Termination Date"). GRANTOR may vacate the Reserved Property prior to the Termination Date if GRANTOR provides at least 60 days' prior written notice of its vacation. If GRANTOR vacates the Reserved Property prior to the Termination Date, GRANTEE must accept the Reserved Property at such earlier date as GRANTOR vacates the Reserved Property and the reserved estate created hereby will terminate at such earlier date."

3. All other terms and conditions of the sale remain.