# MEMBERSHIP INTEREST PURCHASE AGREEMENT

This MEMBERSHIP INTEREST PURCHASE AGREEMENT (the "Agreement"), is made and effective as of November 21st, 2022, by and among RRF Building, LLC, a Delaware limited liability company (the "Company"), Sophie Marie Langford ("Seller") and National Realty USA or assigns ("Purchaser")

RECITALS:

WHEREAS, Seller is the sole member of the Company owning one hundred percent (100%) of its membership interest (the "Membership Interest"); and

WHEREAS, the Company's only assets consist of real property located at 228 Walnut St, Harrisburg, PA 17101-1714, building, related fixtures, easements, agreements, permits, variances, approvals, drawings, tax abatements, tax credits, financial incentives, architectural plans, and rights associated with that certain real property (the "Property"); and

WHEREAS, the sale of the Membership Interest in the Company would result in a complete transfer of the Property by virtue of the Company's exclusive ownership of the Property; and

WHEREAS, Purchaser desires to buy the Membership Interest and at the time of the transfer of the Membership Interest the Company would still be the exclusive owner of the Property; and

WHEREAS, Seller has agreed to sell, and Company has agreed to purchase the Membership Interest upon certain terms and conditions contained herein; and

IT IS THEREFORE AGREED, in consideration of the mutual promises and covenants hereinafter set forth, and for other good and valuable consideration, the parties hereto agree as follows:

I. SALE OF MEMBERSHIP INTEREST
Seller shall sell, transfer and assign all its right, title and interest in and to the Membership Interest to Purchaser at Closing.

II. PURCHASE PRICE
$12,240,000 (which equals Buyer's offer price of $12,000,000 plus a Ten-X Transaction fee of $240,000).



### III. PAYMENT OF PURCHASE PRICE

The Purchase Price shall be payable as follows:

A. Purchaser shall pay an Earnest Deposit of ten percent (10%) of the Purchase Price ($1,224,000) to the De Bruin Law Firm, as Escrow Agent, within one (1) business day of the Effective Date (the "Earnest Money") which shall be deposited in a federally-insured account at a bank to be held and disbursed in accordance with the terms of this Agreement.

B. The Earnest money shall be applied to the Purchase Price at closing.

C. At closing, the Earnest Money shall be credited to the Purchase Price.

D. The balance of the purchase price shall be paid by Purchaser to Seller in cash or electronically wired funds at the time of Closing plus or minus net adjustments as provided herein.

E. The remaining payment of ($11,016,000) shall be due on or before ~~December 6, 2022~~ *January 30, 2023* MH in the form of cash, certified check, or wire.

### IV. ESCROW AGENT

The parties acknowledge that Escrow Agent represents Seller and Purchaser in this transaction. Seller and Purchaser agree that Escrow Agent may act in this dual capacity. The parties understand and agree that Escrow Agent is authorized to deliver the Earnest Money to Seller at Closing. If Closing does not occur, and Escrow Agent receives a notice requesting release of the Earnest Money from either party, Escrow Agent is hereby authorized to release the Earnest Money to the requesting party, provided that:

A. the notice sets forth the basis on which the Earnest Money is to be released;
B. the notice is simultaneously sent to the other party; and
C. the request is not refuted by the non-requesting party within ten (10) days after delivery of the notice. If the parties cannot agree as to the disposition of the Earnest Money, Escrow Agent is authorized to hold the Earnest Money until the parties reach Agreement or until a court of competent jurisdiction establishes the rightful disposition. Escrow Agent shall also be authorized to file an action in interpleader to determine the proper party entitled to the Earnest Money. In consideration of Escrow Agent's services, Seller

and Purchaser agree to indemnify and hold Escrow Agent harmless from and against all liabilities, damages, costs, expenses (including all attorneys' fees and expenses incurred by Escrow Agent or any of Escrow Agent's employees or agents), causes of action, suits, demands, judgments, and claims of any nature whatsoever that might arise at any time out of Escrow Agent's holding, investing, reinvesting, payment, or other disposition of the Earnest Money, except those which result from Escrow Agent's willful misconduct or neglect.

D. Escrow Agent may act in reliance on any writing or instrument or signature which it in good faith believes to be genuine and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so. Escrow Agent shall not be liable in any manner for the sufficiency or correctness as to form, manner or execution or validity of any instrument deposited in this escrow nor as to the identity, authority or right of any persons executing the same; and its duties hereunder shall be limited to safekeeping of the Earnest Money, and for the disposition of the same in accordance with this Agreement.

## V. COMPANY DEBT

The parties acknowledge and agree the Company has no outstanding liabilities. Should the Company have unpaid expenses prior to Closing, those payments shall either be paid prior to closing, and receipts of payment shall be furnished to Purchaser or payment shall be withheld from Seller's proceeds at the time of Closing.

## VI. AMENDMENT OF OPERATING AGREEMENT

At Closing, the Company shall amend its Operating Agreement to show the removal of the Seller as a member of the Company and the addition of Purchaser.

## VII. REPRESENTATION AND WARRANTIES OF SELLER

As a material inducement to Company to purchase the Membership Interest, Seller represents and warrants to Company as follows:

A. The Company is a Delaware limited liability company, duly organized, validly existing and in good standing under the laws for the State of Delaware; and

B. Seller has the lawful right, power, authority and capacity to sell the Membership Interest, effectively transferring 100% ownership in the Company and the Property to Purchaser in accordance with the terms, provisions and conditions of this Agreement.

C. Seller is and at the Closing will be the owner of the Membership Interest free and clear of any liens or encumbrances. Seller does not have any ownership interest or claim upon any of the tangible or intangible assets used by the Company in the conduct of its business at the time of Closing. At Closing, the Company and Property will be free and clear of any liens or encumbrances and the Company will have no outstanding liabilities except for taxes that may have accrued but are not yet due, which liabilities will be assumed by Seller and shall not be a liability of the Company or the Purchaser.

D. Seller is not a party to or otherwise bound by any written or oral agreements which would prevent Seller from entering into this Agreement. Seller: (1) has not pledged its assets for the benefit of any creditor; (2) has not filed for bankruptcy; and (3) is not a party to a divorce action, family court order, or marital separation agreement that provides any other party any rights in and to the Membership Interest, the Company or the Property.

E. Except as to matters that have been previously disclosed in writing to Company, Seller has no knowledge of any action, suit, or governmental proceeding or investigation, pending or threatened, against the Company or Seller or otherwise relating to the transactions contemplated by this Agreement.

F. On the Closing Date, all necessary action will have been taken by Seller pursuant to its operational documents authorizing and approving the execution of and entry into this Agreement, the execution and delivery by Seller of the documents and instruments to be executed and delivered by Seller on the Closing Date, and the performance by Seller of Seller's duties and obligations under this Agreement and of all other acts necessary and appropriate for the consummation of the purchase and sale of the Company and its Property as contemplated by and provided for in this Agreement.

G. The Company has never had any employees, has never had any employee benefits plans, owes no wages to any person, and has never been required to maintain worker's compensation insurance.

H. Except for accounts payable and accrued expenses and as set forth in Schedule VIII(H), the Company has no debts, liabilities, commitments or obligations (including, without limitation, any unasserted claims for which there are circumstances known or which should reasonably be known to exist by the Seller or the Company that could serve as a basis therefor), absolute or contingent, liquidated, or unliquidated, matured or unmatured, or due or to become due.

I. Seller has timely filed and paid all taxes due to any governmental authorities, including local, state, and federal governments.

J. The Company holds all permits, licenses and approvals from all Federal, state and local governmental authorities (collectively, the "Permits") necessary for it to own, remediate, renovate, redevelop, the Property and to carry on its businesses as now being conducted, and no such Permit has been rescinded and all such Permits are in full force and effect and are listed on Schedule VIII(K).

VIII. SELLER'S REPRESENTATIONS OF THE PROPERTY
Concerning the Property, Seller represents the following as of the Effective Date of this Agreement:
A. RRF Building, LLC holds title to the property as shown in Instrument Number 20220004451 at Pages 1-17.

This representation shall not survive the Closing of this Agreement.

IX. CLOSING

   A. Closing Date: December 8, 2022. If the Closing Date falls on a weekend or a state or federally recognized holiday, the Closing Date shall be the next business day.
      1. Option to Extend: Buyer shall have the option to extend and close on or before the 30th day of January 2023.

   B. At Closing, Seller shall deliver to Purchaser the following:

      1. A duly executed Assignment of Membership Interest (the "Assignment") assigning 100% of the Membership Interest to the Purchaser; and

      2. Such written evidence of authority to execute and deliver the Assignment to Purchaser; and

      3. Any documents that Purchaser's and Seller's counsel may reasonably determine are necessary to assign any easements, licenses, Service Agreements and Permits relating to the use of the Property, which Purchaser's and Seller's counsel determines are assignable;

      4. a certificate, in form and substance reasonably satisfactory to Purchaser, confirming that Sellers representations and warranties are true and correct as of the Closing Date; and

      5. all keys (and instructions as to which locks the keys operate), all combinations or passcodes (and instructions as to the location of all locks to which they apply) to the premises.

X. INDEMNIFICATION BY SELLER
Seller shall indemnify and hold harmless Company and Purchaser in respect of any and all claims, losses, damages, liabilities, and expenses (including, without limitation, settlement costs and any legal or other expenses for investigating or defending any actions or threatened actions) reasonably incurred by Company or Purchaser in connection with each and all of the following:

   A. Any misrepresentation or breach of any warranty made by Seller in this Agreement; and

   B. The nonfulfillment or breach of any covenant, agreement or obligation of Seller contained in or contemplated by this Agreement.

XI. INDEMNIFICATION BY PURCHASER AND COMPANY
Purchaser and Company shall jointly and severally indemnify and hold harmless Seller in respect of any and all claims, losses, damages, liabilities and expenses (including, without limitation, settlement costs and any legal or other expenses for investigating or defending any actions or threatened actions) reasonably incurred by Seller in connection with each and all

of the following:

A. Any misrepresentation or breach of any warranty made by Purchaser in this Agreement; and

B. The nonfulfillment or breach of any covenant, agreement or obligation of Purchaser contained in or contemplated by this Agreement.

XII. REMEDIES UPON BREACH

In the event that the terms and conditions of this Agreement have been satisfied and Purchaser does not purchase the Property in accordance with the requirements of this Agreement, then Seller, as its sole and exclusive remedy, shall declare this Agreement cancelled in which event the entire Earnest Money shall be forfeited and paid to Seller as full liquidated damages and not as a penalty. The parties acknowledge that Seller's damages would be difficult to ascertain precisely, and the parties hereto shall have no further rights or obligations with respect to each other except as otherwise provided herein. In the event of Seller's breach of any of the terms, conditions, warranties or representations hereof Purchaser shall have the right to immediately terminate this Agreement upon written notice to Seller and receive back the entire Earnest Money and upon return of the same the parties hereby shall have no further rights and obligations or liabilities to each other hereunder or demand and compel by an action for specific performance or similar legal proceedings, if necessary, the immediate conveyance of the Property by Seller in compliance with the terms and conditions of this Agreement; provided, however, that such action must be brought within thirty (30) days of the scheduled Closing Date or said remedy shall be deemed waived by Purchaser.

XIII. NOTICES

All notices which are required hereunder to be in writing shall be effective with respect to the party who is to receive them as of the date on which such notice is received by mail in care of such party or their counsel in any United States Post Office by certified or registered mail, postage prepaid or received by messenger, overnight service or otherwise to the office of the party or their counsel. The addresses for such notices are as follows:



**AS TO PURCHASER**

With copy to:

**AS TO SELLER**

RRF Building, LLC Attn:
Sophie Longford
16 Wellington Ave
Greenville, SC 29609

With Copy to

De Bruin Law Firm, LLC
Attn: Bryan De Bruin 16
Wellington Ave
Greenville, SC 29609

## XIV. TAXES

1. Seller and the Company for the taxable year ending December 31, 2022, shall elect to treat the Company's 2022 tax year as two separate tax years, the first of which ends on the Closing Date, so that the Company's items of income, deduction, gain and loss from January 1, 2022 through the Closing Date, are allocated to Seller prior to the assignment of Seller's interest in the Company at the Closing Date. A second tax year shall commence on the day after the Closing Date.

2. Taxes on the property should not be due whilst the GSA are in occupation, however incase taxes are due or the GSA vacate the seller is only responsible for taxes up and until the ~~31 December 2022~~ *the Closing date*

3. Should the transaction close on or before 31st December 2022, Buyer and Seller each hereby agree to pay one half of the transfer tax which may be due on account of the Transaction.

4. Should the transaction close on or between the 1st and the 30th January 2023, the buyer is responsible for any transfer tax due on the property, this must be clearly written.

## XV. MISCELLANEOUS

A. Seller shall provide a pronated credit for any unpaid taxes due on the property for the period between January 1, 2022 to the date of Closing. All unpaid taxes owed on the Property, if any, for previous years shall be the responsibility of Seller.

Page 7 of 9
Membership Interest Purchase Agreement – RRF Building LLC

B. All legal, accounting, and other costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby, including attorneys' fees, shall be borne by the party incurring the expense.

C. This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same and shall become effective when one or more counterparts have been signed by each party and delivered to the other party.

D. The parties hereto each agree to execute and deliver such other documents, certificates, agreements and other writings and to take such other actions as may be necessary or desirable in order to consummate or implement expeditiously the transactions contemplated by this Agreement.

E. This contract supersedes any prior agreement or representations prior to today's date (21st day of November 2022). The option to extend is given on the understanding that the buyer signs and returns the contract by 5pm ET on the 21st day of November 2022. The buyer must also pay the deposit as per the original contract within 24 hours (by 5pm tomorrow 22nd November).

{SIGNATURE PAGE TO FOLLOW}

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

Seller: Sophie Marie Langford

*[signature]*

Sophie Marie Langford
Print Name and Title

Purchaser:

*[signature]*

Michael Halotz
Print Name and Title  *Managing Member*

Company: RRF Building, LLC

*[signature]*

Authorized Signature

Daniel Justin Etzin
Print Name and Title

ESCROW AGENT: _____
The Escrow Agent hereby acknowledges receipt of the Earnest Money set forth above and agrees to hold the same in accordance with the terms of this Agreement as indicated on the date indicated below.

Escrow Agent: _____

Date: _____

Page 9 of 9
Membership Interest Purchase Agreement – RRF Building LLC

## ADDENDUM TO MEMBERSHIP INTEREST PURCHASE AGREEMENT

AND NOW THIS __21st__ day of __November__, 2022, the Sophie Marie Longford ("Seller") and Netanel Invest USA, or an affiliated entity ("Buyer") entered into a Membership Interest Purchase Agreement of even date herewith ("Agreement") for the sale by Seller to Buyer of all of the Membership Interests of R.R.F. Building, LLC, a Delaware limited liability company.

WHEREAS, the executed Agreement is silent as to the obligation of the respective parties for the payment of real estate transfer taxes on account of the transaction described therein ("Transaction").

NOW THEREFORE, intending to be legally bound, the parties agree as follows: Buyer and Seller each hereby agree to pay one half of the transfer tax which may be due on account of the Transaction, provided closing takes place on or before December 31, 2022. In the event closing takes place after December 31, 2022, Seller shall pay $50,000 on account of transfer tax and Buyer shall be required to pay the balance.

Buyer and Seller hereby agree that the purchase price shall be allocated as follows:
$10,000,000 to Real Estate
$2,000,000 to tax credits, all permits, licenses, and approvals from all Federal, state, and local governmental authorities (collectively, the "Permits") necessary for it to own, remediate, renovate, redevelop, the Property and to carry on its businesses

Seller represents and warrants to Buyer that the United States of America, General Services Administration is responsible for payment of all real estate taxes for so long as it continues occupancy of the building, and if any taxes due up and until the date of the closing will be the responsibility of the seller.

Seller agrees and accepts the date of the closing and the date of when "the remaining payment" is due to be changed to on or before January 30th, 2023.

In the event of a conflict between the terms set forth in this addendum and the terms set forth in the Agreement, this addendum shall control.

IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals, the day and year first above written.

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF

ATTEST

Sophie Marie Longford - SELLER

ATTEST

Netanel Invest USA

By: _____
Michael Hefetz, Managing Member

ATTEST

R.R.F. BUILDING, LLC

By: _____