IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RRF BUILDING, LLC**, and **SOPHIE MARIE LONGFORD** | |
| Plaintiff | Civil Action No. 1:23-CV-0341 |
| v. | |
| **EXCEL DEVELOPMENT GROUP, NETANEL INVEST USA, INC., and MICHAEL HELETZ**, | Electronically Filed |
| Defendant | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNT III AND ALL COUNTS AGAINST DEFENDANT HELETZ

### I.     INTRODUCTION

The instant action arises out of a proposed real estate transaction for the sale of the Ronald Reagan Federal Building in Harrisburg, PA. Plaintiffs, the sellers of the building, have sued potential buyer Netanel Invest USA, Inc. ("Netanel")—as well as its representative Michael Heletz and another group Heletz is affiliated with, Excel Development Group ("Excel")—after the deal for the sale fell through. The Amended Complaint includes three Counts: (1) breach of contract against Excel and Heletz for alleged breach of "Participation Terms," following an online

auction in which Excel was the successful bidder; (Am. Compl. ¶¶ 54–59); (2) breach of contract against Netanel and Heletz for alleged breach of a "Second Agreement" that stemmed from renegotiations following the auction; and (*Id.* ¶¶ 65–73); and (3) fraud against all three defendants on the ground that they allegedly "never had the means to pay the necessary deposit" before entering into negotiations and somehow "prevent[ed] [Plaintiffs] from accepting any other bids." (*Id.* ¶¶ 74–86).

Count III fails as a matter of law both because allowing the fraud claim to proceed would violate Pennsylvania's gist of the action doctrine and, in any event, Plaintiffs have not adequately pleaded facts supporting fraud. And all claims against Heletz, as an individual, should be dismissed because the Amended Complaint alleges insufficient facts to pierce the corporate veil or to suggest he was acting in his individual capacity. Accordingly, the instant motion seeks dismissal of Count III and all claims against individual Defendant Heletz for failure to state a claim.

## II.    PROCEDURAL HISTORY

Plaintiffs filed an initial Complaint in the Court of Common Pleas Court for Dauphin County on January 18, 2023. Following service of the Complaint on or

about January 28, 2023, Defendants timely removed the action to this Court on February 27, 2023. On March 6, 2023, Defendants moved to dismiss Counts I and III of the Complaint along with all claims brought against Defendant Michael Heletz. Plaintiffs then filed an Amended Complaint on March 16, 2023, mooting the Motion to Dismiss.

On March 20, 2023, Defendants filed a Motion to Dismiss Count III and all claims brought against Defendant Michael Heletz in the Amended Complaint. This brief follows.

### III.   FACTUAL ALLEGATIONS

Plaintiff RRF Building, LLC ("RRF"), is the owner of the Ronald Reagan Federal building and courthouse located at 228 Walnut Street in Harrisburg. (Am. Compl. ¶ 9.) Plaintiff Sophie Marie Longford is the sole member of RRF. (*Id.* ¶ 2.) The Amended Complaint alleges that RRF contracted with a commercial real estate company, Ten X, to conduct an online auction on November 14, 2022. (*Id.* ¶¶ 10–11.) Ten X, in turn, provided "Participation Terms" to all bidders. (*Id.* ¶ 12.)

Heletz, in his capacity as principal of Excel, registered for the auction and bid on the property, ultimately emerging as the winning bidder with a bid of $12,000,000. (*Id.* ¶¶ 20–21.) The Ten X summary page attached as Exhibit C to the

3

Amended Complaint makes clear that Heletz was not registering for the auction in his individual capacity. (*Id.* Ex. C.) Plaintiffs nonetheless allege that *both* Heletz and Excel breached the Participation Terms by failing to sign the Agreement, wire the down payment, or otherwise adhere to the Participation Terms. (*Id.* ¶ 29.)

Plaintiffs further allege that Heletz then communicated that he wanted to change the Agreement and delay the closing date, and that "Heletz and his attorney, Craig Adler, drew up a new purchase agreement and an addendum (collectively the 'Second Agreement')." (*Id.* ¶¶ 31–32.) The Amended Complaint admits that this alleged "Second Agreement" modified various terms, including changing the purchasing entity from Excel to Netanel, and that Plaintiffs agreed to renegotiate the terms of the sale. (*Id.* ¶¶ 37–41.) Attached to the Amended Complaint as Exhibit E is a document purporting to be a "Membership Interest Purchase Agreement" between Plaintiffs and Netanel. (*Id.* Ex. E.) Again, though Heletz was clearly and unambiguously acting as a representative of Netanel during the negotiations, and his signature line lists him as "Managing Member" of Netanel, Plaintiffs purport to allege breach of contract claims *both* against Netanel and Heletz personally for failure to close on the deal or make payment.

The Amended Complaint notes that the "Second Agreement" explicitly "supersedes any prior agreement or representation prior to . . . November 21, 2022." (*Id.* ¶ 42.)

In addition to their claims for breach of contract, Plaintiffs purport to allege a claim for fraud against all three Defendants, claiming that, "[u]pon information and belief, . . . the Defendants never had the means to pay the necessary deposit." (*Id.* ¶ 76.) Plaintiffs allege no facts in support of this alleged "information and belief" other than that payment was ultimately not made. Plaintiffs offer no alleged motive for Defendants to have falsely represented their means during negotiations. Though Plaintiffs allege—again, "upon information and belief"—that Defendants bid on the auction with "the expectation [of] leveraging the situation and negotiating different prices, payments, and closing dates," (*Id.* ¶ 82), this allegation belies logic since, as Plaintiff alleges, the parties then actively negotiated a Second Agreement that did not significantly change the prices, payments, or closing dates.

Finally, Plaintiffs seek to "pierce the corporate veil" and impose personal liability on Heletz, based primarily on a series of "beliefs." (*Id.* ¶¶ 46–51.) Specifically, Plaintiffs "believe" that "Netanel is not truly an independent corporate entity, but simply a façade for Defendant Heletz," that "Netanel was

5

created by Heletz shortly before bidding on RRF," and that "Netanel did not have the funds to complete the transaction." This last "belief" is then immediately characterized as a "fact" to indicate that "Netanel is not an operating company with its own assets, but rather a façade for Heletz." (*Id.* ¶ 48.) Plaintiffs rely exclusively on four actual facts to support their beliefs: (1) Netanel did not register as a bidder with Ten X, (2) when Heletz was having surgery, he allegedly did not identify an alternate contact to complete the transaction in his absence for several days;[1] (3) Plaintiffs and their attorney have communicated only with Heletz; and (4) Heletz communicates through his exceldevgroup.com email address. (*Id.*)

## IV. STATEMENT OF QUESTIONS

    A. Should Count III of the Amended Complaint be dismissed because of the gist of the action doctrine or, in the alternative, because it fails to state a claim for fraud?

    B. Should all claims against individual Defendant Michael Heletz be dismissed because he is not alleged to have acted in his individual capacity and because the allegations are insufficient to pierce the corporate veil?

(Proposed Answers in the Alternative)

---

[1] Plaintiff's repeated suggestion that Defendants were unavailable or disengaged for several days following the auction is belied by the contemporaneous documentation, in any event, and will be sharply disputed if this matter goes beyond the motion to dismiss stage.

## V.    <u>LEGAL STANDARDS</u>

A motion to dismiss "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Third Circuit has held that a "district court should conduct a two-part analysis" when faced with a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." . . . This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211–12 (3d Cir. 2009) (internal citations omitted).

To survive a motion to dismiss, a plaintiff must allege fraud with "particularity." Fed. R. Civ. P. 9(b). This particularity requirement places a burden

on plaintiff to plead "(1) a specific false representation of material fact, (2) knowledge by the person who made it of its falsity, (3) ignorance of its falsity by the person to whom it was made, (4) the intention that it be acted upon, and (5) that the plaintiff acted upon it to his damage." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992). When allegations of fraud are based on "information and belief," these allegations should be accompanied by a statement of the facts upon which the belief is founded. *Kimmel v. Peterson*, 565 F. Supp. 476, 482 (E.D. Pa. 1983). Moreover, while allegations of "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," this generality standard "does not give [a plaintiff] license to evade the . . . strictures of Rule 8." *Vives v. Rodriguez*, 849 F. Supp. 2d 507, 522 (E.D. Pa. 2012).

### VI. ARGUMENT

#### A. Count III fails as a matter of law and should be dismissed.

##### 1. *Plaintiffs' fraud claims are barred by the gist of the action doctrine.*

As noted above, Plaintiffs' fraud claim alleges that, "[u]pon information and belief, . . . the Defendants never had the means to pay the necessary deposit," and, therefore, never intended to abide by their obligations to fulfill the purchase terms

8

under the alleged contracts. (*Id.* ¶¶ 76, 82.) Plaintiff's fraud claim is barred by the gist of the action doctrine.

The gist of the action doctrine "operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Atlantic Holdings, Ltd. v. Apollo Metals, Ltd.*, 263 F. Supp. 3d 526, 531 (E.D. Pa. 2017) (*quoting Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). The doctrine essentially asks, "What's this case really about?" *Id.* If the alleged tort concerns "the performance contractual duties," then the tort claim is barred. *Vives*, 849 F. Supp. 2d at 520. Conversely, if the alleged tort is collateral to the performance of the contract, the "gist of the action" is the tort and may proceed. *Id.*

Courts in this Circuit have regularly analyzed whether fraud-in-the-inducement claims, as alleged here, may be barred by the gist of the action doctrine. *See Gordon v. Pasquarello*, No. 22-1565, 2023 WL 2505538, at *26 (E.D. Pa. 2023 (collecting cases) (attached as Exhibit A). The majority view is that the gist of the action doctrine can and should apply to bar such claims where, as here, the "fraud" pertains to the intent to perform under the contract. *See id.*; *see also Atlantic Holdings*, 263 F. Supp. 3d 526 (dismissing fraudulent inducement claim predicated upon a party's intent to engage in settlement discussions as

9

required by a tolling agreement); *Agrotors, Inc. v. Ace Global Markets,* No. 1:13-vc-2014, 2014 WL 690623, at *4 (M.D. Pa. 2014) (holding that doctrine bars fraudulent inducement claims based on "misrepresentations as to a party's intent to perform under a contract") (attached as Exhibit B). As Judge Dalzell summarized in *Vives,*

> If a plaintiff can demonstrate that the defendant knew, at the time a contract was entered, that he did not intend to perform under that contract—thus satisfying [an] element of a fraudulent misrepresentation claim—then success in proving the elements of a claim for breach would necessarily produce success in prosecuting a fraud claim. Similarly, an inability to prove a contract claim—whether because no agreement was concluded, no breach occurred, or no injury resulted—would doom any fraud claim based on misrepresentation of the intent to perform. Once a plaintiff proved that a defendant intended not to perform under a contract, any fraud claims would precisely duplicate any contract claims. Given this congruency between fraudulent inducement claims predicated on the intent to perform under a contract and claims for breach of that contract, *eToll* suggests that the former claims are barred by the gist of the action doctrine.

*Vives*, 849 F Supp. 2d at 521 (*citing eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 17 (Pa. Super. Ct. 2002).

Here, the alleged fraud is that Defendants bid on the subject property and then negotiated a Purchase Agreement while never intending to fulfilling their contractual obligations. The alleged "misrepresentation" is literally that Defendants

did not have the means or intent to abide by the contract terms for purchase of the property. Though Plaintiffs may attempt to distinguish the alleged fraud as one involving *ability* to pay rather than intention to pay, this is a distinction without a difference. As in Judge Dalzell's example, Plaintiffs' "success" in the alleged fraud claim is entirely contingent on any success they achieve in the breach of contract claim, and an inability to prove the contract claims would "doom any fraud" claim. *Id.* Accordingly, the gist of the action doctrine should bar Count III of the Amended Complaint, and it should therefore be dismissed.

### 2. In the alternative, the fraud claims should be dismissed for failure to state a claim.

Plaintiffs allege no facts in support of their "information and belief" that Defendants "never had the means to pay the necessary deposit" other than that the purchase was never made. This is insufficient to state a claim for fraud. *See Vives*, 849 F. Supp. 2d at 522.

*Vives* is apposite. There, the plaintiff alleged that she entered into an agreement with the defendants to act as straw purchasers of a property on her behalf and to then to sell the property and give her the net proceeds. *Id.* at 511. She claimed that they purchased the property using her funds, then sold the property and used the proceeds to pay off their own expenses, rather than give her the funds

11

as agreed. *Id.* at 512. In bringing claims for fraud, she asserted that the defendants never intended to uphold their part of the arrangement and cited their later use of the funds to pay off their own expenses. *Id.* at 523. The Court held that this allegation "does not create more than a sheer possibility . . . that defendants knowingly or recklessly misrepresented their intent to perform" at the time they made the agreement. *Id.* Therefore, the court held that the "promise to perform" was not a "material misrepresentation, with scienter." *Id.*

Again, here, the alleged misrepresentation is that Defendants bid on the subject property while intending to renege on their obligation to follow through on the purchase. The only factual allegation in support of this alleged intent is that Defendants did not, in fact, purchase the property. This is insufficient to allege fraud, and Count III should be dismissed.

### B. All claims against Heletz in his individual capacity should be dismissed.

As an initial matter, the Amended Complaint does not even purport to suggest that Defendant Excel is the alter ego or a "façade" for Defendant Heletz or that Heletz signed the Participation Terms in his individual capacity. Therefore, any claims brought against Heletz under Count I—breach of contract under the Participation Terms—should be dismissed for failure to state a claim.

Similarly, Plaintiffs do not allege that Heletz signed the Second Agreement in his individual capacity, and the document itself indicates that the Agreement was between Plaintiffs and Netanel. Accordingly, any claim based independently on Heletz, rather than on a piercing the corporate veil theory, should be dismissed.

The Amended Complaint seeks to "pierce the corporate veil" with respect to Netanel, but Plaintiffs fail to set forth sufficient allegations to establish Netanel as the alter ego or mere instrumentality of Heletz. The Third Circuit has identified the following factors as relevant to a finding that an individual should be personally liable for the debts of a corporate entity: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds by the dominant shareholder; (6) non-functioning of other officers and directors; (7) absence of corporate records; and (8) the fact that the corporation is a mere façade for the operations of the dominant shareholder. *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503, 1521 (3d Cir.1994). "In short, the evidence must show that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes." *Id.* Since an alter ego theory is "akin to and has elements of

fraud," the plaintiff has the burden of showing liability by clear and convincing evidence. *Id.* at 1522.

The Amended Complaint fails to plead any facts to satisfy the *Kaplan* standards.[2] Instead, Plaintiffs *assume* the first factor, alleging a "belief" that Netanel did not have funds to complete the transaction, and then label Netanel the "façade" of Heletz. The factual bases for these conclusions—that Excel, rather than Netanel, registered as a bidder; that Heletz did not offer other agents to transact business for a few days; that Heletz was Plaintiffs' only contact; and that he communicated with them through an exceldevgroup.com email address—do not come close to satisfying any of the eight *Kaplan* factors. Under these circumstances, dismissal is appropriate. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (granting motion to dismiss claim against alleged "alter ego" where complaint insufficiently alleged facts to support *Kaplan* factors).

To the extent Plaintiffs contend that discovery is necessary to determine whether the *Kaplan* factors are present, this court should reject such a contention. Plaintiffs are not permitted to go on a fishing expedition into Netanel's corporate

---

[2] To the extent Plaintiffs do seek to hold Heletz responsible as an alter ego of Excel pursuant to Count I, despite the Complaint's lack of allegations in this regard, these arguments apply equally to such a claim.

structure based exclusively on unfounded suspicions. If a judgment were to be entered against Netanel and Netanel were to be unable to pay that judgment, only then might discovery be relevant to determine if the corporate veil should be pierced.

## VII. CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court grant Defendant's Motion to Dismiss and dismiss Count III as well as all claims against Defendant Heletz.

                                         */s/ Joshua L. Schwartz*
                                  Joshua L. Schwartz, Esquire
                                  Attorney I.D. #308189
                                  jschwartz@barley.com
                                  Justin Tomevi, Esquire
                                  Attorney I.D. # 313661
                                  jtomevi@barley.com
                                  100 East Market Street
                                  York, PA  17401
                                  Telephone (717) 846-8888
                                  *Attorneys for Defendants*

10515324.1