IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RRF BUILDING, LLC and | : | |
| SOPHIE MARIE LANGFORD | : | |
| Plaintiffs | : | Civil Action No. 1:23-CV-0341 |
| | : | |
| v. | : | |
| | : | |
| EXCEL DEVELOPMENT | : | |
| GROUP, NETANEL INVEST USA,: | | |
| INC., and MICHAEL HELETZ, | : | |
| Defendants | : | |

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COUNTS III AND ALL COUNTS AGAINST DEFENDANT HELETZ**


Respectfully submitted,

CGA LAW FIRM

By: */s/ Stephen R. McDonald*
        Stephen R. McDonald, Esquire
        Attorney I.D. No.310319
        135 North George Street
        York, PA   17401
        (717) 848-4900
        (717) 843-9039 fax
        smcdonald@cgalaw.com
        *Attorney for Plaintiffs*

# TABLE OF CONTENTS

Pages

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

Brief in Opposition to Defendant's Motion to Dismiss
Counts III and All Counts Against Defendant Heletz . . . . . . . . . . . . . . . .   1

Facts and Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Statement of Questions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    A.    Whether Defendant's Motion to Dismiss Should Be Denied
           Where Plaintiffs' Amended Complaint Contains Sufficient
           Factual Matter to Support A Plausible Claim for Fraud?   3

    B.    Whether Defendant's Motion to Dismiss Claims Against
           Michael Heletz Should Be Denied Where Plaintiff Has
           Alleged Sufficient Allegations to Support a Plausible Claim
           To Pierce the Corporate Veil?   3

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

    A.    Plaintiff's Amended Complaint Contains Sufficient
           Factual Matter to Support A Plausible Claim for Fraud . . . . . .   5

        1)    Gist of the Action Doctrine . . . . . . . . . . . . . . . . . . . . . .   5

        2)    Failure to State a Claim . . . . . . . . . . . . . . . . . . . . . . . .   12

i

B.   Plaintiffs Have Alleged Sufficient Allegation to Support
A Plausible Claim to Pierce the Corporate Veil . . . . . . . . . . . .  14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ii

## TABLE OF AUTHORITY

**Cases**                                                     **Pages**

Davis v. City of Philadelphia, 821 F.3d 484, 488
(3d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . 4

Agrotors, Inc. v. Ace Glob. Markets, No. 1:13-CV-1604,
2014 WL 690623, at *2 (M.D. Pa. Feb. 24, 2014) . . . . . . . . . . . . . . . 4

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n. 8 (2007) . . . . . 4

Fowler v. UPMC Shadyside, 578 F.3d 203, 212 (3d Cir.2009) . . . . . . 4

Twombly, 550 U.S. at 563, n. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Air Prod. & Chemicals, Inc. v. Eaton Metal Prod. Co.,
256 F. Supp. 2d 329 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 11

Smith v. Renaut, 564 A.2d 188,191 (Pa. Super. 1989) . . . . . . . . . . . 7

Gordon v. Pasquarello, WL 2505538 (2023 Slip Op.) . . . . . . . . . . . . 8, 11

SodexoMAGIC, LLC v. Drexel Univ.,
24 F.4th 183, 217 (3d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

Atlantic Holdings, Ltd v. Appollo Metals, Ltd.,
263 F. Supp. 3d 526 (E.D. Pa. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 11

Vives v. Rodriguez, 849 F. Supp. 2d 507 (E.D. Pa. 2012) . . . . . . . . . 11,12,13,14

{02283175/1}

Powervar, Inc. v. Power Quality Scis., Inc.,
No. CV 20-2508, 2021 WL 2986417 (E.D. Pa. July 15, 2021) . . . . . .  15

United States v. Exec. Health Res., Inc.,
196 F. Supp. 3d 477, 516 (E.D. Pa. 2016) . . . . . . . . . . . . . . . . . . . . . . . 16

Labar Vill. Cmty. Ass'n, Inc. v. VFG-LaBar, L.L.C.,
No. CV 3:08-1010, 2008 WL 11367896, at *3
(M.D. Pa. Aug. 1, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Atl. Richfield Co. v. Blosenski, 847 F.Supp. 1261, 1281
(E.D.Pa.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Adani Exports, 2006 U.S. Dist. LEXIS 77205, *6 . . . . . . . . . . . . . . . 16

Miners, Inc. v. Alpine Equipment Corp.
722 A.2d 691, 695 (Pa.Super.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) . . . . . 17

iv

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RRF BUILDING, LLC and        :
SOPHIE MARIE LANGFORD   :
        Plaintiffs        :     Civil Action No. 1:23-CV-0341
                  :
        v.           :
                  :
EXCEL DEVELOPMENT     :
GROUP, NETANEL INVEST USA,:
INC., and MICHAEL HELETZ,  :
        Defendants      :

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
COUNTS III AND ALL COUNTS AGAINST DEFENDANT HELETZ**

AND NOW, this 27th day of April, 2023, comes Plaintiffs, RRF Building, LLC and Sophie Marie Langford, by and through their counsel,   Stephen R. McDonald, Esquire, and CGA Law Firm, and files the within Brief in Opposition to Defendant's Motion to Dismiss Counts III and all Counts Against Defendant Heletz ("Motion"), as follows:

I.    FACTS AND ALLEGATIONS

RRF Building, LLC ("RRF") is a company whose sole asset consists of the Ronald Reagan Federal Building and courthouse located at 228 Walnut St., Harrisburg, PA 17101-1714 ("Property") along with the fixtures, permits, rights and other assets associated with the Property.  RRF contracted with commercial real estate company Ten X to conduct an online auction ("Auction") for RRF.

The Auction was scheduled for November 14, 2022, and all potential bidders were provided with terms of participation in the Auction. ("Participation Terms"). *See* Exhibit A of Plaintiffs' Amended Complaint.

As explained in the Participation Terms, Ten X was simply acting as the broker on "behalf of Seller", in this case RRF, to conduct the Auction of the Property. *See* Exhibit "A" p. 1 of 10.   Moreover, under the Participation Terms, by "registering for an Event or submitting an Offer...Participant acknowledges having read and accepted these terms." *Id*.

Ten X, acting on behalf of Plaintiffs, notified Heletz and Excel that they were the winning bid of Twelve Million Dollars ($12,000,000.00) of the Property. Ten X, acting on behalf of the Plaintiffs, sent Heletz a Notification Packet containing an Agreement with instructions to sign and return within 2 hours.  The Notification Packet also instructed Heletz to wire a 10%  deposit as requested by the terms of the Agreement.  Defendants failed to sign and return the Agreement or wire the funds.

## II.    PROCEDURAL HISTORY

Plaintiffs  filed  a  Complaint  in  the  Court  of  Common  Pleas  of  Dauphin County, Pennsylvania.   On February 27, 2023, Defendant requested the action be removed to this Court.   On March 6, 2023 Defendants moved to dismiss Counts I

and III of the Complaint as well as all claims against Defendant Michael Heletz, and in response Plaintiffs filed an Amended Complaint.

On March 30, 2023, Defendants filed a Motion to Dismiss Count III and all claims against Defendant Michael Heletz. Defendants filed a Brief in Support on April 13, 2023. Plaintiffs file this Brief in Opposition to Defendant's Brief in Support of its Motion to Dismiss Counts III and all Counts Against Defendant Heletz.

## III.  STATEMENT OF QUESTIONS

**A.    Whether Defendant's Motion to Dismiss Should Be Denied Where Plaintiffs' Amended Complaint Contains Sufficient Factual Matter to Support A Plausible Claim For Fraud?**

Suggested Answer:      Yes

**B.    Whether Defendant's Motion To Dismiss Claims Against Michael Heletz Should Be Denied Where Plaintiff Has Alleged Sufficient Allegations To Support A Plausible Claim To Pierce The Corporate Veil?**

Suggested Answer:      Yes

## IV.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Davis v. City of Philadelphia, 821 F.3d 484, 488 (3d Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In order to evaluate a motion to dismiss, a court should conduct a three-part analysis:

> In the first step, the court must take note of the elements a plaintiff must plead to state a claim. Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.   Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a plausible claim for relief. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant    is    liable    for    the    misconduct    alleged.

Agrotors, Inc. v. Ace Glob. Markets, No. 1:13-CV-1604, 2014 WL 690623, at *2 (M.D. Pa. Feb. 24, 2014)

This Court may not dismiss a Complaint even if it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n. 8 (2007). Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 212 (3d Cir.2009).   In short, a Motion to Dismiss should not be granted if a

party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563, n. 8.

## V.    ARGUMENT

### A.    Plaintiff's Amended Complaint Contains Sufficient Factual Matter to Support A Plausible Claim For Fraud

#### 1)    Gist of the Action Doctrine

Applying the three part test to Plaintiff's Amended Complaint, it is clear that Plaintiff has met its burden and Defendant's Motions should be denied.

First, the Court must consider the elements of Plaintiff's claim, in this case fraud.   "Elements of fraudulent misrepresentation, under Pennsylvania law, are: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) intention by maker to induce recipient thereby, (4) justifiable reliance by recipient on the misrepresentation, and (5) damage to recipient as a proximate result of the misrepresentation." Air Prod. & Chemicals, Inc. v. Eaton Metal Prod. Co., 256 F. Supp. 2d 329 (E.D. Pa. 2003).  In this case, Plaintiffs have alleged specific facts which sufficiently support an allegation of fraud on the part of the Defendants.

Next, the Court must separate out well pleaded facts in the complaint.   In this case, Plaintiffs have plead the following facts relating to fraud:

1) RRF contracted with Ten X to conduct an online auction for the sale of the Ronald Reagan Federal Building.  (Complaint ¶¶ 9-10).

2) All potential bidders were provided with terms of participation in the Auction, which included having readily available funds deposit, signing all purchase documents within 2 hours of being notified of a winning bid, and paying the deposit the next business day.  (Amended Complaint ¶¶ 12-15)

3) Defendant Heletz, not Defendant Netanel, registered as a bidder. (Amended Complaint ¶19).

4) Defendant Heletz, not Defendant Netanel, purported to have funds available in excess of $12 million.  (Amended Complaint ¶20)

5) After being notified that he had placed the winning bid, Defendant Heletz neither signed the documents, nor made the deposit, and instead set about renegotiating the terms of the sale.  (Amended Complaint ¶¶ 12-15).

6) After repeatedly refusing to deposit the down payment or even communicate with Plaintiffs, Defendant Heletz submitted an new contract substituting Defendant Netanel as the purchaser.  (Amended Complaint ¶¶ 29-37).

7) However, even after the substitute agreement was signed, neither Defendant Heletz or Defendant Netanel ever wired the deposit or completed the transaction. (Amended Complaint ¶¶ 44-45).

8) Despite the fact that neither Defendant Heletz nor Defendant Netanel intended to complete the contract under the terms presented, or had the funds necessary to complete the transaction, they induced Plaintiffs to accept Defendants' bid and thereby not accept other bids.

(Amended Complaint ¶¶ 75-82)

Finally, in the third prong of the test, the Court must determine whether the aforegoing facts are sufficient to show a plausible claim for fraud. Accepting these allegation as true, which must be done for the purposes of Defendants' Motion, these actions amount to fraud. "It is well-settled that one who fraudulently makes a misrepresentation of fact or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation." Smith v. Renaut, 564 A.2d 188,191 (Pa. Super. 1989). "[F]raud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth." Id.

Not surprisingly, given all of these facts, Defendants primary argument is not that Plaintiffs' claims are insufficient, but that the Amended Complaint should be dismissed under the Gist of the Action Doctrine.   In support, the Defendants site to a number of cases which deal with the Gist of the Action Doctrine generally.

However, even the cases Defendants rely on do not support dismissing the instant claims under the Gist of the Action Doctrine.  In Gordon v. Pasquarello, WL 2505538 (2023 Slip Op.), which Defendants attached as an exhibit to their brief, the court's holding directly contradicts Defendants' position as demonstrated.  Gordon is generally inapplicable in that it deals with violations of RICO.  However, the court does discuss the Gist of the Action, and wrote "[c]onsidering the alleged misrepresentations here as occurring *before the creation of the binding contract*, SodexoMAGIC would presumably permit Plaintiff's first two proposed predicate acts to proceed *because they are not barred by the gist of the action doctrine*."  Gordon at 24 (emphasis added).  The Gordon Court's opinion emphasizes the distinction between parties' duties before a contractual relationship and duties that arise from a contract.

SodexoMAGIC, the case which the Gordon court referenced in its opinion, is a Third Circuit opinion that emphasized, "a precontractual duty not to deceive through misrepresentation or concealment exists independently of a later-created contract."  SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 217 (3d Cir. 2022).  "And even if such a duty could be retroactively incorporated into a contract, that would still not foreclose a tort action. When a contractual duty duplicates an obligation generally owed to another in society, the gist of the action doctrine does not bar a tort claim."  Id.

The SodexoMAGIC Court ultimately held:

> The gist of the action doctrine does not apply here because SDM's fraudulent inducement claim does not depend on the breach of a contractual duty. SDM alleges that Drexel misrepresented and intentionally concealed its internal student enrollment projections while the parties were negotiating the Management Agreement. At that time, however, the parties had not executed the Management Agreement. And without a binding contract, any duty Drexel owed SDM during negotiations was grounded only in tort.

Id.

This recent case demonstrates that the facts and timing of any case are critical in determining whether the Gist of the Action Doctrine applies. While Gordon and the other cases Defendants cite are not comparable to the instant matter, the case of Air Prod. & Chemicals, Inc. v. Eaton Metal Prod. Co., 256 F. Supp. 2d 329, 334 (E.D. Pa. 2003) presents a far better comparison.

The facts of Air Products are:

> From 1994 through 2001, Air Products contracted with Eaton to purchase approximately 100 pressure vessels to be constructed in compliance with the American Society of Mechanical Engineers Boiler and Pressure Vessel Code ("ASME Code" or "Code"). The ASME Code imposes a comprehensive and rigorous framework of rules for the design, fabrication, testing and inspection of pressure vessels. Prior to and during the entire period of dealings, Eaton represented to Air Products that it possessed the necessary certifications to manufacture ASME Code approved pressure vessels and that each vessel had been constructed in accordance with the ASME Code.
> In May 2001, Air Products discovered a serious crack in the metal wall of one of the Eaton-manufactured pressure vessels, and learned that the manufacturing plants at which much of the vessel

construction occurred was not properly certified by the ASME to manufacture ASME Code compliant pressure vessels.

Id. at 334.

As the Defendants do in the instant matter, Eaton argued that doctrine of economic loss and gist of the action doctrine prohibited Air Products from alleging fraud where a contract was the underlying basis. Id.   The Air Products Court disagreed, holding that Eaton's initial misrepresentations were distinct from its actions under the contract.   Id.   at 338. Explaining fully, the court wrote:

> [The allegation of fraud] does not relate to the quality or characteristics of the pressure vessels [Air Product] bought from Eaton. When Air Products sought to contract for the manufacture and purchase of pressure vessels, **it presumably had a number of sources to choose from**. In choosing Eaton, Air Products relied on Eaton's representation that its facilities were ASME certified to produce ASME Code compliant vessels. **Assuming Air Products' allegations are true, Eaton lied in making this representation and intended Air Products to rely on it. It is clear that, had Eaton not told Air Products it was ASME certified, Air Products would not have entered into contract with Eaton.** That is a fraudulent misrepresentation.

Id. (emphasis added).

The Air Products court emphasized the difference between the mere non-performance of a contract, and a situation where one party never intended to perform.  "The distinction is easy to demonstrate by way of a hypothetical scenario in which Eaton was, in fact, ASME certified but nevertheless produced vessels that were *not* ASME Code compliant."  Id.  Or, stated differently, a claim of fraud is

supported where the dispute is not over "the quality or character of goods but of the parties involved in the contract." Id.  In such instances a claim for fraud is appropriate. Id. In other words, there is a clear distinction between failing to perform, which is a mere breach of contract, and never intending to perform which is a fraud.

Applying the same rationale to the instant case, the Gist of the Action Doctrine would not bar Plaintiffs' claims. The important point in the instant matter, as underscored by the holdings in Gordon, SodexoMAGIC, and Air Products, is that the Defendants knowingly made fraudulent representations, *prior to the contract being in place*, and where the representations were designed to induce the Plaintiffs to forego other bids prior to the auction when Plaintiffs could have easily have contracted with other bidders. This fact, that Plaintiffs could have accepted other bids, is one of the key reasons the Defendants' misrepresentations are so damaging.  The plaintiffs in Atlantic Holdings, Ltd v. Appollo Metals, Ltd., 263 F. Supp. 3d 526 (E.D. Pa. 2017);  Vives v. Rodriguez, 849 F. Supp. 2d 507 (E.D. Pa. 2012); and Gordon v. Pasquarello WL 2505538) (E.D. Pa. 2023) did not have other immediate options, and the claims in those cases arose *during* the performance of the contract.

Another critical distinction between this case and those cited by Defendants is the short length of time between Defendant Helez registering for the auction and

then *immediately* failing to fulfill any of the terms.  That short time frame strongly supports a claim of fraud because it is reasonable to infer there was no sudden change of circumstances, or other reason that Defendant did not perform, other than that Defendant never planned to complete the purchase under the terms it knew were being offered.  For this reason, the present situation is significantly distinguishable from the Vives case Defendants rely on. In Vives, the plaintiff claimed the parties entered into an agreement on June 1, 2006 and the defendants breached on August 7, 2006, meaning months had passed. Vives 849 F. Supp. 2d at 511.  Additionally, the Vives court also noted there was a dispute between the parties, during that time period, over the use/possession of a power of attorney. Id. None of those additional factors are present in the case at bar.

Based on the facts present in this case, and the holdings of the most applicable cases cited here and in Defendants' Brief, the Gist of the Action Doctrine is not applicable and would not bar Plaintiffs claims.

### 2) Failure to State a Claim

Alternatively, the Defendants argue that Plaintiffs' Complaint fails to state a claim for fraud.  However, the Amended Complaint identified with particularity the who, what, how, and when of Defendant's fraudulent conduct in accordance with Rule 9(b).   As discussed *supra*, the Amended Complaint contains specific facts relating to each of the elements of fraud.

The Defendant again relies on <u>Vives</u> to support its position, and again this reliance is misplaced because of the factual differences between that case and the instant matter.   The Defendants Brief selectively cites the language in the Vives Court's opinion that the allegations in that case "do not create more than a sheer possibility…that defendants knowingly or recklessly misrepresented their intent to perform" (Def. Brief, p. 12 quoting <u>Vives</u>, at 523).   However, as previously discussed, Vives concerned a contract that occurred on June 1 and a breach that occurred more than 2 months later. Moreover, Vives involved a straw sale of a property, which those defendants performed, and a dispute over a power of attorney. <u>Id</u>. at 511.

All of these facts were highly relevant, but the Defendants selective citation misses the critical part of the court's opinion which gives it reasoning.   The full passage reads:

> And although Asteria alleges that "[s]hortly after receiving payment for the August 10, 2006 sale of the property, Defendants ... satisfied the mortgage of their Florida home in large measure through proceeds from the net balance of the sale" of the property, Pl.'s Compl. ¶ 27 this allegation does not create more than a sheer possibility that defendants knowingly or recklessly misrepresented their intent to perform *on June 1, 2006*. Ultimately, Asteria has presented no factual allegations suggesting that Frank and Miguelina knowingly misrepresented their intent to perform *when they entered into their alleged agreement with Asteria*.

Id. (emphasis added) (internal citations omitted)

Read in its full context, it is clear that, even if the <u>Vives</u> Court had questions about whether the intent to breach occurred prior to the contract, after the sale, or somewhere in between, and that this question was a significant factor in its determination.

This is significantly different than the present case where there was no gap in time, no partial performance, no dispute over collateral issues, and the facts strongly suggest Defendants had a fraudulent intent from the outset. Given that "a court must accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences" Vives at 511, the Defendant's Motion fails to meet its burden and must be denied.

**B.     Plaintiffs Have Alleged Sufficient Allegations To Support A Plausible Claim To Pierce The Corporate Veil**

The second portion of Defendants' 12(b) Motion seeks to dismiss claims against Defendant Heletz.

The fact that Heletz registered as a bidder in the auction individually, under his own name (Amended Complaint ¶19), would be sufficient to include Heletz as a defendant in Counts I & III and to pierce the veil. However, in addition, there also remain all the other facts which support piercing the veil:

> 1) Netanel appears to have been created by Heletz at the time of the
>    auction and does not have sufficient assets to be conducting this type

of business i.e. grossly undercapitalized. (Amended Complaint ¶¶47-48)

2) Heletz failed to observe corporate formalities and switched from Excel to Netanel. (Amended Complaint ¶37)

3) There were no other employees or agents of Netanel other than Heletz (Amended Complaint ¶¶49-50)

4) Even when acting as Netanel, Heletz uses an email through Excel. (Amended Complaint ¶52)

Collectively, these facts support a claim piercing the veil on the basis that Netanel is nothing more than a shell company. In looking at comparable cases, courts have denied motions to dismiss related to piercing the veil, where similar facts have been adduced. See Powervar, Inc. v. Power Quality Scis., Inc., No. CV 20-5908, 2021 WL 2986417 (E.D. Pa. July 15, 2021).

The facts the Powervar Court relied on in denying a motion to dismiss were:

Plaintiff alleges that less than one month after Plaintiff accused PQS/Sweat of breaching the Agreement and demanded that PQS/Sweat return its post-termination commissions, Sweat created a new entity, APS. Plaintiff alleges that Sweat did this for a number of reasons, but namely to divest PQS of its assets and continue his business while avoiding liability to Plaintiff. Plaintiff also alleges that APS engages in the same business space as PQS, that Sweat is the dominant shareholder of both corporations, and that both share the same principal place of business – Sweat's personal residence.

<u>Id</u>. at 6.  The court held plaintiff had "alleged a sufficient factual basis to pierce the corporate veil under an alter ego theory." <u>Id</u>. at 5.

Moreover, there is no "rigid test" to pierce the veil.  <u>United States v. Exec. Health Res., Inc.</u>, 196 F. Supp. 3d 477, 516 (E.D. Pa. 2016).  Instead, corporate veil may be pierced 'whenever necessary to avoid injustice. <u>Labar Vill. Cmty. Ass'n, Inc. v. VFG-LaBar, L.L.C.</u>, No. CV 3:08-1010, 2008 WL 11367896, at *3 (M.D. Pa. Aug. 1, 2008).  Plaintiffs only eventually need to prove some of the factors which can be examined. See <u>Atl. Richfield Co. v. Blosenski</u>, 847 F.Supp. 1261, 1281 (E.D.Pa.1994) (piercing the corporate veil of several corporations that were formed with little capitalization and where corporate formalities were not observed, two individuals constituted all of the officers of the corporations and the corporations appeared to function as "mere shells" of the defendant). Additionally, the fact that Plaintiff has set forth facts supporting a claim for fraud also weighs in favor of piercing the veil. See <u>Labar Vill</u>. *citing* <u>Adani Exports</u>, 2006 U.S. Dist. LEXIS 77205, *6 (pleading that corporation was used to perpetrate a fraud through the undercapitalization of corporation was sufficient).

Ultimately, "the alter ego theory is applicable where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." <u>Miners, Inc. v. Alpine Equipment Corp</u>. 722 A.2d 691, 695 (Pa.Super.1998) (emphasis omitted).   At this stage, Plaintiff does not need to

adduce enough evidence to carry its ultimate burden on an alter ego theory. Powervar. at 6. Rather, Plaintiffs only need to plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). In advance of discovery dismissing Count III of the Amended Complaint and/or dismissing all Counts against Heletz would be premature, and Defendants' Motion should be denied.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs request this Honorable Court deny Defendant's Motion to Dismiss Count III and all Counts Against Defendant Heletz.

Respectfully submitted,

CGA LAW FIRM

By: /s/ Stephen R. McDonald
      Stephen R. McDonald, Esquire
      Attorney I.D. No.310319
      135 North George Street
      York, PA   17401
      (717) 848-4900
      (717) 843-9039 fax
      smcdonald@cgalaw.com
      Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**RRF BUILDING, LLC and**     :
**SOPHIE MARIE LANGFORD**     :
          **Plaintiffs**     :      **Civil Action No. 1:23-CV-0341**
                     :
         **v.**           :
                     :
**EXCEL DEVELOPMENT**     :
**GROUP, NETANEL INVEST USA,** :
**INC., and MICHAEL HELETZ,**     :
          **Defendants**     :

## CERTIFICATE OF COMPLIANCE

I certify that the *Brief in Opposition to Defendant's Brief in Support of its Motion to Dismiss Counts III and all Counts Against Defendant Heletz* complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and the Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:

By: */s/ Stephen R. McDonald*
Stephen R. McDonald, Esquire
Attorney I.D. No.310319

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RRF BUILDING, LLC and :
SOPHIE MARIE LANGFORD :
       **Plaintiffs** :      **Civil Action No. 1:23-CV-0341**
                  :
       **v.** :
                  :
EXCEL DEVELOPMENT :
GROUP, NETANEL INVEST USA,:
INC., and MICHAEL HELETZ, :
       **Defendants** :

## CERTIFICATE OF COMPLIANCE
## OF WORD COUNT

I hereby certify that the accompanying *Brief in Opposition to Defendant's Brief in Support of its Motion to Dismiss Counts III and all Counts Against Defendant Heletz* complies with the word count limitations pursuant to LR 7.8(b)(2) of the Middle District Court, and subject to Fed.R.Civ.P.11, as described in this subsection, in that it contains 4038 words, based on the word-count function of Microsoft Word, including footnotes.

Submitted by:

By: */s/ Stephen R. McDonald*
        Stephen R. McDonald, Esquire
        Attorney I.D. No.310319

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RRF BUILDING, LLC and          :
SOPHIE MARIE LANGFORD          :
          Plaintiffs     :     Civil Action No. 1:23-CV-0341
                      :
          v.               :
                      :
EXCEL DEVELOPMENT             :
GROUP, NETANEL INVEST USA,:
INC., and MICHAEL HELETZ,      :
          Defendants      :

### CERTIFICATE OF SERVICE

I hereby certify that on April 27th, 2023,  a true and correct copy of the *Brief in Opposition to Defendant's Brief in Support of its Motion to Dismiss Counts III and all Counts Against Defendant Heletz*  was filed electronically through the Court's ECF system.

Via CM/ECF:

Joshua L. Schwartz, Esquire
Justin Tomevi, Esquire
Barley Snyder
100 East Market Street
York, PA   17401
*Attorneys for Defendants*


CGA LAW FIRM


By: */s/ Stephen R. McDonald*
     Stephen R. McDonald, Esquire
     Attorney I.D. No. 310319