IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RRF BUILDING, LLC**, and **SOPHIE MARIE LONGFORD,** | |
| Plaintiff | Civil Action No. 1:23-CV-0341 |
| v. | |
| **EXCEL DEVELOPMENT GROUP, NETANEL INVEST USA, INC.,** and **MICHAEL HELETZ**, | Electronically Filed |
| Defendant | |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNT III AND ALL COUNTS AGAINST DEFENDANT HELETZ

In their opposition brief, Plaintiffs ignore the relevant test for gist-of-the-action doctrine, mischaracterize the allegations in their Complaint, and, for purposes of piercing the corporate veil, double down on "information and belief" assumptions that they have no basis to allege. This is an ordinary breach of contract action between companies. The Court should reject Plaintiffs' attempt to turn the case into something more than that.

   A.   **Plaintiffs' fraud claims fail.**

As set forth in Defendants' initial brief, Plaintiffs' fraud claims are based on the "information and belief" that Defendants never intended to fulfill the purchase

1

terms of the contract. (Am. Compl. ¶¶ 76, 82.) They further claim that this misrepresentation was "designed the induce Plaintiffs to forego other bids prior to the auction." (Pl. Br. 9.) This argument constitutes a classic "fraud in the inducement" claim, and well-established precedent confirms that such claims are barred by the gist of the action doctrine where, as here, the alleged fraud concerns "the performance of contractual duties." *See Vives v. Rodriguez*, 849 F. Supp. 2d 507, 521 (E.D. Pa. 2012).

In their brief, Plaintiffs cite to cases standing for the noncontroversial proposition that the gist of the action doctrine does not bar a fraudulent inducement claim where the alleged fraud "does not depend on the breach of a contractual duty." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 217 (3d Cir. 2022). So in *Sodexo*MAGIC, for example, the alleged fraud was that Drexel "misrepresented and intentionally concealed student enrollment projections," a collateral fact upon which the plaintiff relied when determining whether the contractual relationship would be sufficiently profitable. *Id.* And in *Air Products*, the buyer of a product alleged fraud against the seller for lying about its qualifications and certifications to produce compliant products. *Air Prod. Chemicals, Inc. v. Eaton Metal Prod. Co.*, 256 F. Supp. 2d 329, 334 (E.D. Pa. 2003). In neither of those cases was the question presented by fraud whether the defendant *intended* to perform under the

contract. On the contrary, Drexel engaged SodexoMAGIC's services on campus, and Eaton sold allegedly defective products to Air Product Chemicals.

Here, by contrast, Plaintiffs allege only that Defendants never intended to perform under the contract but, rather, hoped to "leverag[e] the situation and negotiat[e] different prices, payments, and closing dates." (Am. Compl. ¶ 82.) As the Court held in *Vives*, a claim that a party never intended to fulfill a contract necessarily duplicates the breach of contract claim. *Vives*, 849 F. Supp. 2d at 521. This is because "success in proving the elements of a claim for breach would necessarily produce success in prosecuting a fraud claim," and "an inability to prove a contract claim . . . would doom any fraud claim based on misrepresentation of the intent to perform." *Id.* In other words, if Plaintiffs establish the existence of a contract to purchase the RRF Building and that Defendants did not fulfill its contractual obligations thereunder, they have necessarily also established that Defendants lied about their intention to fulfill those contractual obligations. And conversely, if Plaintiffs fail to establish the existence of a contract to purchase the RRF Building, or if they fail to establish that Defendants did not fulfill their contractual obligations under such a contract, then they necessarily cannot establish that Defendants lied about their intentions. *Id.* The facts necessary to prove the breach are also necessary to prove the fraud and vice versa; the damages

allegedly sustained by Plaintiff are also the same. Under these circumstances, the gist of the action doctrine applies and bars the fraud claim.

Defendants also contend that Plaintiffs have alleged insufficient facts with particularity to establish that they did not intend to fulfill their obligations under any contract. Again, the only facts alleged are the "information and belief" that they "never had the means to pay the necessary deposit" and that the purchase was never made. This is insufficient to state a claim for fraud.

In their brief, Plaintiffs point to the short timeframe between the alleged contract and the alleged total failure to perform. They also assert that "the facts strongly suggest Defendants had a fraudulent intent from the outset," but they do not specify these alleged "facts." (Pl. Br. at 13–14.) Plaintiffs cite no authority for the proposition that a short timeframe between entering into a contract and not performing under that contract is suggestive of fraud, and one does not logically follow from the other. Accordingly, and for the reasons set forth in Defendants' initial brief, Count III should be dismissed.

B. **Plaintiffs' claims against Mr. Heletz, individually, fail.**

As an initial matter, Plaintiffs' brief makes clear that the *only* basis on which they believe they can plausibly seek to impose liability on Mr. Heletz individually is through piercing of the corporate veil. Heletz was not a signatory to either the Participation Terms (the "contract" allegedly breached per Count I) or the Second

Agreement (Count II), nor is he alleged to have individually negotiated any contract between himself and Plaintiffs. Though Plaintiffs repeat their demonstrably false allegation that Heletz registered as a bidder in the auction individually (Pl. Br. 14 (citing Am. Compl. ¶ 19)), the auction summary page attached as Exhibit C to the Amended Complaint makes clear that Heletz was not registering individually but, rather, as principal for Defendant Excel. (Am. Compl. Ex. C.) Therefore, any claim against individual Heletz purportedly *not* based in a piercing the corporate veil theory should be dismissed.

To pierce the corporate veil and thereby impose liability on Heletz, Plantiffs' brief doubles down on the "information and belief" allegations in the Amended Complaint, recasting them in an attempt to shoehorn them into the *Kaplan* factors. The Amended Complaint alleges that "it is believed and therefore averred" that Netanel was created shortly before the bidding, (Am. Compl. ¶47), and then Plaintiffs' brief argues that this means Netanel was "grossly undercapitalized." (Pl. Br. 14–15.) The Amended Complaint alleges that the Second Agreement made Netanel the purchases rather than Excel (Am. Compl. ¶37), and then Plaintiffs' brief argues that this means "Heletz failed to observe corporate formalities." (Pl. Br. 15.) The Amended Complaint alleges that "Plaintiffs and their attorney have never had contact with anyone at Netanel other than Heletz" and that "Netanel could not offer any other employee or agent" when Heletz was unavailable (Am.

5

Compl. ¶¶ 49–50), and then Plaintiffs' brief argues that this means "there were no other employees or agents of Netanel." (Pl. Br. 15.) Finally, Plaintiffs point to Heletz's use of an exceldevgroup.com email address to communicate with them throughout their interaction. (*Id.*)

"[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). As explained in Defendants' initial brief, Plaintiffs' "information and belief" allegations are not "facts" upon which the court can or should rely to pierce the corporate veil at the pleadings stage. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015). And the fact that an owner of a corporation is the only person involved in operations is an insufficient basis to pierce the corporate veil. *See Lumax Indus., Inc.,* 669 A.2d at 895. Indeed, there are *no* facts upon which the Court could conclude that Excel or Netanel could not pay a judgment if found liable in this matter. Piercing the corporate veil is therefore inappropriate.

Respectfully submitted,

BARLEY SNYDER

*/s/ Joshua L. Schwartz*
Joshua L. Schwartz, Esquire
Attorney I.D. #308189
jschwartz@barley.com
Justin Tomevi, Esquire
Attorney I.D. # 313661
jtomevi@barley.com
100 East Market Street
York, PA  17401
Telephone (717) 846-8888
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that this Reply Brief in Further Support of Defendant's Motion to Dismiss was filed electronically and is available for viewing and downloading on the Court's CM/ECF system this 11th day of May, 2023.

                        BARLEY SNYDER

                        */s/ Joshua L. Schwartz*
                        Joshua L. Schwartz, Esquire
                        Attorney I.D. #308189
                        Attorneys for Defendants Excel Development Group, Netanel Invest USA, Inc., and Michael Heletz