IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RRF BUILDING, LLC** and **SOPHIE MARIE LANGFORD,** | : | No. 1:23cv341 |
| Plaintiffs | : | (Judge Munley) |
| v. | : | |
| **EXCEL DEVELOPMENT GROUP; NETANEL INVEST USA, INC.;** and **MICHAEL HELETZ,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiffs have filed a breach of contract and fraud lawsuit regarding the auction sale of the Ronald Reagan Federal Building and Courthouse in Harrisburg, Pennsylvania. Before the court for disposition is the defendants' motion to dismiss portions of the plaintiffs' amended complaint. The parties have briefed their respective positions and the matter is ripe for disposition.

## Background[1]

Plaintiff RRF Building, LLC ("RRF") is a company, which holds as its sole asset the Ronald Reagan Federal Building and Courthouse located on Walnut

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

Street in Harrisburg. (Doc. 5, Am. Compl. ¶ 9). In an effort to sell the building, RRF contracted with Ten X, a commercial real estate company, to conduct an online auction. (Id. ¶ 10). Ten X acted as the broker on behalf of RRF to conduct the auction of the property. (Id. ¶ 13). Potential bidders were provided with the "Participation Terms" of the auction. (Id. ¶ 12).

Defendant Heletz registered as a bidder in the auction. (Id. ¶ 19). Heletz is the managing member of Defendant Netanel Invest USA ("Netanel"). (Id.) In registering for the auction, Defendant Heletz identified himself as the principal of Excel Development Group. (Id. ¶ 20).

Defendants Heletz and Excel placed a $12,000,000 dollar bid which won the auction on the building. (Id. ¶ 21). Defendants were evidently unprepared or unable to meet the timeframe for closing on the deal as set forth in the Participation Terms. (Id. ¶¶ 24-28). Thus, they and plaintiff entered into a Second Agreement extending the various deadlines, such as the closing date. (Id. ¶¶ 31-43).[2]

According to plaintiff, defendants violated the Participation Terms of the auction and the Second Agreement in several ways. For example, per plaintiffs, defendants failed to close on the required date, failed to pay the down payment,

---

[2] The Participation Terms and the Second Agreement are addressed more fully where appropriate below.

and failed to pay the purchase price. (Id. ¶ 45). As result, the plaintiff filed the instant complaint which is comprised of the following three counts: Count I – Breach of Contract of the Participation Terms against Defendants Heletz and Excel; Count II – Breach of Contract regarding the Second Agreement against Heletz and Netanel; and Count III – Fraud against all the defendants.

Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count III – Fraud and to completely dismiss from the case the individual defendant, Michael Heletz. The parties have briefed their respective positions bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff RRF Building, LLC is a Delaware limited liability company. (Doc. 5, Am. Compl. ¶ 1). The sole member of RRF is Plaintiff Sophie Marie Longford who is a citizen of the United Kingdom. (Doc. 4-2). Defendant Michael Heletz is a citizen of New York state. (Doc. 4, ¶ 11). Defendant Netanel Invest USA, Inc. is incorporated under the laws of the State of New York with its principal place of business in New York and is therefore a citizen of New York. (Doc. 4, ¶ 10). cite). Defendant Excel Development Group is a limited liability company whose sole member is Defendant Michael Heletz, who is a citizen of New York,

therefore, Defendant Excel is a citizen of New York. (Doc. 5, Am. Compl. ¶¶4-5). Additionally, the amount in controversy exceeds $75,000.

Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]").

As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will

4

reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

## Discussion

As noted above, defendants seek dismissal of Count III- Fraud as well as the complete dismissal of Defendant Heletz. The court will address these issues in turn.

### I. Motion to Dismiss Count III – Fraud

First, defendants move to dismiss Count III of the amended complaint which alleges fraud. They argue that the "gist of the action" doctrine bars plaintiff from pursuing a fraud claim. Under the gist of the action doctrine, a plaintiff may not plead a tort action, such as fraud, as a means of stating a breach of contract action. If a party brings a claim that arises "solely from the contract between the parties ... where the duties allegedly breached were created and grounded in the contract itself . . . where the liability stems from a contract . . . or where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the contract," the claim is barred under the doctrine. eToll Inc. v. Elias/Savion Advert., Inc., 811 A.2d 10,19 (Pa. Super. Ct. 2002) (internal citations and quotation marks omitted).

The key to the disposition of this issue is whether the gravamen of the claim is found in tort or in contract. Contract actions arise from breach of duties mutually agreed to, while torts have their basis in violations of duties imposed as a matter of social policy. Phico Ins. Co. v. Presbyterian Med. Serv. Corp., 663 A.2d 753, 757 (Pa. Super. Ct.1995).

Plaintiff alleges the breach of two contracts in the instant case. The first is contained in the Count I and involves breaching the "Participation Terms." The amended complaint alleges that Heleltz's and/or Excel's registration and participation in the auction created a binding contract with plaintiffs, the terms of which were contained in "Participation Terms." (Doc. 5, Am. Compl. ¶ 57). The Participation Terms included that the winning bidder do the following:

1) Pay a transaction fee, which would be added to the total contract purchase price (Id. ¶¶ 15(h), 59);

2) Sign purchase documents within two (2) hours of the auction (Id. 15 ¶ (d));

3) Provide proof of readily available funds (Id. ¶ 15(f));

4) Pay an "earnest money deposit" of 10% of the purchase price by 5:00 p.m. on the day after being notified they were the winner bidder (Id. ¶ 15(g)); and

5) The winning bidder was then required to pay the remaining amount of the purchase price by December 8, 2022. (Id. ¶ 60).

Defendants were notified that they were the winning bidder, yet they did not sign the purchase documents within two (2) days of being notified, did not pay the 10% earnest money deposit as required, and they did not pay the remaining amount of the purchase price by December 8, 2022. (Id. ¶¶ 25, 61).  These alleged failures amount to a breach of contract with regard to the "Participation Terms" according to the plaintiffs. (Doc. 5, Am. Compl. ¶¶ 54-64).

After breaching these terms, Defendant Heletz failed to communicate with plaintiffs for several days. (Id. ¶ 30).  When he finally contacted the plaintiffs, Heletz stated that he sought a new agreement and a postponement of the closing date. (Id. ¶ 31).  This second agreement was similar to the first, except it continued the closing date to January 30, 2023. (Id. ¶ 38).  It required the payment of the 10% earnest money deposit within one business day after the effective date. (Id. ¶ 39).  The second agreement also changed the purchaser from Defendant Excel to Defendant Netanel. (Id. ¶ 37).

Count II of the amended complaint alleges a breach of the Second Agreement.  Plaintiffs allege that defendants breached this agreement by not paying the down payment and failing to close the transaction by December 8, 2022 or January 30, 2023. (Id. ¶¶ 69-70).  The Second Agreement provided for liquidated damages in the amount of the earnest money deposit, that is $1,244,000.00. (Id. ¶¶ 71, 73).

Count III of the amended complaint alleges fraud. The fraud allegations are intertwined with the breach of contract issues found in Counts I and II. Plaintiffs allege that the defendants participated in the auction knowing that it did not have the means to pay the required down payment. (Id. ¶¶ 75-76). Per the amended complaint, defendants bid on the property knowing that they could not meet the terms but with the expectation that they could leverage the plaintiffs into negotiating differing prices, payments, and closing dates. (Id. ¶ 82). Thus, plaintiffs allege defendants entered into the contract with no intention of performing the duties required by it.

The amended complaint alleges that defendants did not have the means to pay the necessary deposit but bid anyway, misrepresenting to the plaintiffs that they could meet its terms. Count III also alleges that plaintiffs made a misrepresentation to the defendants by signing the Second Agreement and representing that they intended to follow through with the purchase of the property. (Id. ¶ 84). The law provides that a promise made without the intent of carrying out the promise can support an action for fraud. SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 218 (3d Cir. 2022) (citing Rose v. Rose, 123 A.2d 693, 697 (Pa. 1956)).

With regard to contracts, at least two different types of fraud can be pled, fraud in the inducement of the contract and fraud in the performance of the

9

contract. Here, the plaintiffs allege that defendants had no intention to perform under the contract and made fraudulent misrepresentations to induce plaintiffs into accepting their bid. They also had no intention of performing the duties of the "Second Agreement" but used fraudulent misrepresentations to induce plaintiffs into entering into that contract. Thus, plaintiffs have alleged fraudulent inducement, and the specific type of fraud in the inducement is a misrepresentation as to whether they intended to perform the duties of the contract.

As noted above, Pennsylvania law applies to the instant dispute. "When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source." Spence v. ESAB Grp. Inc., 623 F.3d 212, 216 (3d Cir. 2010). Where there is no "controlling decision by the Pennsylvania Supreme Court, [this court] must predict how it would rule if faced with the issue." Id. The Pennsylvania Supreme Court has not addressed the issue with which the court is faced. That issue is whether the gist of the action doctrine would bar a fraud claim where the alleged fraud involved an intention to never perform under the contract.

Federal district courts, applying Pennsylvania law have predicted that the Pennsylvania Supreme Court would apply the gist of the action doctrine to bar fraud in the inducement where the alleged misrepresentations relate to whether

10

the party intended to perform under the contract at all. Vives v. Rodriguez, et al., 849 F. Supp. 2d 507 (E.D. Pa. 2012). If the fraudulent misrepresentation refers to whether or not the alleged fraud is that the party did not intend to perform the contract at all, "Courts of this Circuit, including our Court of Appeals, have predicted that the Pennsylvania Supreme Court would apply the gist of the action doctrine to bar fraudulent inducement claims where the misrepresentations in question concern duties later incorporated into a contract." Id. at 521.

The Vives court explained:

> If a plaintiff can demonstrate that the defendant knew, at the time a contract was entered, that he did not intend to perform under that contract – thus satisfying [an] element of a fraudulent misrepresentation claim – then success in proving the elements of a claim for breach would necessarily produce success in prosecuting a fraud claim. Similarly, an inability to prove a contract claim – whether because no agreement was concluded, no breach occurred, or no injury resulted – would doom any fraud claim based on misrepresentation of the intent to perform. Once a plaintiff proved a defendant intended not to perform under a contract, any fraud claims would precisely duplicate any contract claims. Given this congruency between fraudulent inducement claims predicated on the intent to perform under a contract and claims for breach of that contract, eToll suggests that the former claims are barred by the gist of the action doctrine.

Vives, 849 F. Supp. 2d at 521 (footnote omitted).

The Vives court proceeded to conclude "that the Pennsylvania Supreme Court would likely hold that fraudulent inducement claims based upon a party's alleged misrepresentation as to its intent to perform under a contract are barred by the gist of the action doctrine." Id. at 522.

11

The court finds the analysis in Vives persuasive and agrees with its holding. See also, Agrotors, Inc. v. Ace Glob. Mkts., No. 1:13cv1604, 2014 WL 690623 (M.D. Pa. Feb. 24, 2014) (holding same); Oldcastle Precast, Inc. v. VPMC, LTD., Civ. NO. 12-6270, 2013 WL 1952090 at *10 (E.D. Pa. May 13, 2013) (agreeing "with the authority in our Circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine."); Cauley v. Geisinger Clinic, No. 4:21cv45, 2022 WL 265947 (M.D. Pa. Jan. 27, 2022) (applying the analysis set forth in Vives).

However, in support of their position, plaintiffs cite to SodexoMAGIC, LLC . v. Drexel Univ., 24 F.4th 183 (3d Cir. 2022). In this case, the Third Circuit applying Pennsylvania law, allowed a fraud in the inducement claim to proceed despite a challenge based upon the gist of the action doctrine. This case is distinguishable from the instant case. As noted above, courts have applied a gist of action doctrine to preclude a fraud action where the misrepresentation was that the contracting party never intended to perform the contract. In SodexoMAGIC, the issue was not whether the allegedly fraudulent party intended to perform the contract. The issue was whether the party made fraudulent misrepresentations in the negotiations leading up the formation of the

12

contract. Id. at 217. (indicating that the alleged fraud was in the negotiations between a college and a food vendor where the college allegedly misrepresented the student enrollment).

Moreover, in the instant case, the alleged fraudulent misrepresentation is inextricably linked with the contract. For example, the first alleged contract is based on the "Participation Terms" of the online auction. No allegations are made that the parties engaged in any type of negotiations before the formation of the contract. It appears the defendants merely registered for the auction, and thus formed the contract by agreeing to the "Participation Terms." (See Doc. 5, Am. Compl. ¶¶ 12-18). The Second Agreement was allegedly quite similar to the first with extended deadlines and a change of the buyer from Defendant Excel to Defendant Netanel. (Id. at ¶¶ 37-40). The alleged fraud is that defendants never intended to perform under the contract. (Id. at ¶ 84).

Here, the gist of the action doctrine precludes plaintiffs' fraud claim as plaintiffs allege a fraud in the inducement based on the defendants never intending to fulfill their contractual obligation. Accordingly, the defendants' motion to dismiss Count III will be granted.

**II. Motion to Dismiss Defendant Heletz**

The second issue raised by the defendants' motion to dismiss is whether Defendant Heletz can be held liable in his individual capacity for the actions of

the corporate defendants, Defendant Excel Development Group and Netanel Invest USA, Inc. Plaintiffs' amended complaint seeks to hold Defendant Heletz liable by piercing of the corporate veil. (Doc. 5, Am. Compl. ¶¶ 46-55).

In Pennsylvania, "a corporation ... is normally regarded as a legal entity separate and distinct from its shareholders." Ashley v. Ashley, 393 A.2d 637, 641 (Pa.1978); see also Advanced Tele. Sys., Inc. v. Com–Net Pro. Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) ("the general rule is that a corporation shall be regarded as an independent entity even if its stock is owned by one person"); Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 207 (Pa.1976) (noting that a corporation with a single shareholder can be an independent entity); Barium Steel Corp. v. Wiley, 108 A.2d 336, 341 (Pa.1954) ("The fact that one person owns all of the stock does not make him and the corporation one and the same person"). As such, "there is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa.1995) (citing Wedner v. Unemp't Bd., 296 A.2d 792, 794 (Pa.1972)).

Nevertheless, "whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded." Ashley, 393 A.2d at 641. Still, "[t]he corporate entity or personality will be disregarded

only when the entity [is] used to defeat public convenience, justify wrong, protect fraud or defend crime." Sams v. Redev. Auth. of New Kensington, 244 A.2d 779, 781 (Pa. 1968). Therefore, "[t]he alter ego doctrine is not applied by a test, but by consideration of relevant 'factors ... to determine whether the debtor corporation is little more than a legal fiction.' " Trs. of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 197 (3d Cir.2003) (quoting Pearson v. Component Tech. Corp., 247 F.3d 471, 484–85 (3d Cir. 2001)). Courts in Pennsylvania have found allegations of "failure to adhere to corporate formalities, substantial intertwining of personal and corporate affairs, undercapitalization, and the furthering of personal interests" sufficient to pierce the corporate veil. Commw., Dep't of Env't Res. v. Peggs Run, 423 A.2d 765, 768–69 (Pa. Commw. Ct. 1980).

After a careful review, the court finds that plaintiffs have sufficiently alleged facts to overcome defendants' motion to dismiss. Plaintiffs allege:

1) Defendant Heletz appears to have created Defendant Netanel at the time of the auction and it is grossly undercapitalized in that it did not have sufficient assets to be conducting the type of business it engaged in, namely, bidding 12 million dollars on a building. (Doc. 5, Am. Compl. ¶¶ 47-48).

2) Heletz switched from Excel to Netanel without observing corporate formalities. (Id. ¶ 37).

3) The sole employee or agent of Netanel was Heletz. (Id. ¶¶ 49-50).

4) Heletz used an Excel email address even when acting as Netanel. (Id. ¶ 52).

It appears to the court that these allegations are sufficient to deny the defendants' motion to dismiss. Although it may be a close call, at this preliminary stage, the allegations summarized above are sufficient to state a claim to pierce the corporate veil. Plaintiffs have therefore stated a claim that is more than speculative and is plausible on its face and are entitled to engage in discovery to determine whether the corporate veil should be pierced.

## Conclusion

For the reasons set forth above, the defendants' motion to dismiss will be granted with respect to the fraud claim, Count III of the amended complaint, and it will be denied as to Defendant Heletz with respect to piercing the corporate veil. An appropriate order follows.

Date: 8/12/2024

JUDGE JULIA K. MUNLEY
United States District Court